No. 84-197

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

JANET SOWELL,

        Plaintiff and Appellant,

  -vs-

TEACHERS' RETIREMENT SYSTEM OF THE
STATE OF MONTANA, and CAROLYN WHEELON,

        Defendants and Respondents.

---

APPEAL FROM:  District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin,
               The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Monte D. Beck argued, Bozeman, Montana

    For Respondents:

        J. Michael Young argued for Teachers' Retirement,
        Dept. of Administration, Helena, Montana
        Kirwan & Barrett; Stephen Barrett argued for Wheelon,
        Bozeman, Montana

---

Submitted: November 1, 1984

Decided: December 27, 1984

Filed:  DEC  1984

*Ethel M. Harrison*

Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

This is an appeal from a judgment entered pursuant to findings of fact and conclusions of law filed by the Eighteenth Judicial District Court in and for Gallatin County. Plaintiff, the surviving widow of Larry Sowell, brought this action to declare her rights with respect to the retirement and death benefit account of Larry Sowell, deceased. The trial court entered judgment for Carolyn Wheelon and Janet Sowell appeals.

Larry Sowell (Larry), a music professor at Montana State University, died of cancer on October 7, 1982. Larry was first married to Carolyn Wheelon (Carolyn), on December 18, 1955. They had three children, all of whom are now adults. Larry became a member of Teacher's Retirement System (TRS) in 1966 while still married to Carolyn. Larry designated Carolyn as beneficiary on a form provided by the TRS. That designation remains unchanged to this date.

Larry and Carolyn were divorced in September of 1973. After the 1973 divorce, Larry married Janet Sowell (Janet), and they were married at the time of Larry's death, eight years later. Several days prior to Larry's death, and while in the hospital, he wrote and executed a valid holographic will leaving all of his estate to Janet.

At the time of Larry's divorce from Carolyn, a property settlement agreement was executed providing for the disposition of the marital property. Carolyn's lawyer prepared the agreement. Larry received an automobile and all his tools, personal clothing and effects. Carolyn received as part of the property settlement agreement most of the rest of the marital assets. The principal asset was $39,000 equity in the home, which was given to Carolyn. Larry was required to

2

continue a Business Men's insurance policy with his children remaining as beneficiaries until they married or reached majority. Both Larry and Carolyn individually had retirement accounts through their respective employers. Carolyn was employed by the Bozeman Public Schools. After the divorce, Carolyn withdrew her accumulated contributions from her account.

The property settlement agreement provided that the division of property was:

> ". . . in full settlement, satisfaction and relinquishment of all rights of dower, support, maintenance, succession, homestead, inheritance or heirship, which he or she may at this time or hereafter might be otherwise entitled to, in and to all property, both real and personal, which the other party now has or may hereafter acquire . . ."

Testimony from Janet indicated that she and Larry had discussed the TRS. She stated that Larry advised her she would receive the death benefits should he predecease her. Both periodically reviewed forms listing beneficiary information and accumulation amount sent semi-annually by the TRS. In each case, the word beneficiary was followed by "spouse." Janet testified that Larry specifically told her that since she was his spouse, she was also his beneficiary.

Larry's original membership form, dated September 12, 1966, designated Carolyn Sowell as beneficiary. During the sixteen years Larry was a member, he was apparently never provided a copy of the original form showing the named beneficiary. Rather, the TRS sent biannual statements of a member's account which did not show the specifically named beneficiary, but rather listed categories such as spouse, son, daughter, etc.

Carolyn was notified of her right to benefits as Larry's designated beneficiary following Larry's death. Larry's TRS account then amounted to $20,171, of which more than $15,000

3

accrued during his marriage to Janet. Janet, who is the widowed "spouse" of Larry, also applied for the benefits. Her application was denied by the TRS.

The trial court found that Larry may have intended for Janet to receive his teacher's retirement account, but that such intent must be coupled with an affirmative act to change the beneficiary before Janet could prevail. Absent the coupling of intent and affirmative act, the trial court held that the designated beneficiary controlled disposition of the proceeds of the account. Judgment was entered in favor of Carolyn Wheelon.

We are presented with the following issues on appeal:

1. Did the property settlement agreement divest Carolyn Wheelon of her interest in the TRS account?

2. Does the clear and convincing evidence show that it was Larry Sowell's intent to leave the proceeds of the account to Janet Sowell and, if so, is such clear evidence of intent sufficient without the presence of an affirmative act to accomplish that result?

3. What effect, if any, does a wife's marital interest in her husband's pension fund have upon the ownership of the proceeds of the account following her husband's death?

Appellant contends that the property settlement agreement relinquished Carolyn's interest in the TRS account. The property settlement agreement does not specifically refer to Carolyn's designation as beneficiary, but rather, relinquishes Carolyn's rights of "dower, support, maintenance, succession, homestead, inheritance or heirship" and her right to "all property, both real and personal which the other party now has or may hereafter acquire." This language does not specifically cover Carolyn's inchoate right to acquire property upon the happening of a future event.

4

A similar question was addressed by this Court in Soha v. West (1981), 196 Mont. 95, 637 P.2d 1185. In that case, the husband purchased an insurance policy naming his wife as first beneficiary and his parents as alternate beneficiaries. A very short time later the parties were divorced. The husband then died. The former wife remained the first-named beneficiary. An action was instituted to declare the rights of the respective parties to the insurance proceeds. The trial court entered summary judgment in favor of the former wife who was named as first beneficiary. In the Soha case, the decedent's parents argued that the property settlement agreement entered into by the parties was a relinquishment by the former wife of any interest in the insurance proceeds. The applicable language from the property settlement agreement was similar to the language before us in this case. The Soha agreement provided:

> "In consideration of the execution of this agreement, and the terms and conditions thereof, each party hereto releases and forever discharges the other party, his or her personal representative, and assigns from any and all right, claims, demands and obligations except as herein specifically provided and each party is forever barred from having or asserting any such right, claim, demand or obligation at any time hereafter for any purpose . . .." Soha, 637 P.2d at 1187.

This Court noted that there is a division of authority on whether a property settlement agreement affects beneficiary rights under a life insurance policy. The Court noted the division without adopting either position. Rather, we remanded the case for a factual hearing on the intent of the parties at the time the property settlement agreement was executed. We distinguish the case at bar from Soha in that the proceeds in the TRS account are to be paid according to the provisions of § 19-4-1001, MCA. That section provides, in part:

5

"Allowances for death of member. (1) If a member dies before retirement, his accumulated contributions shall be paid to his estate or such person as he may have nominated by a written designation filed with the retirement board prior to his death in the manner prescribed by the board."

Pursuant to the provisions of the controlling statute, the proceeds of the Teacher's Retirement System account can only be paid to one nominated by a written designation or, in the absence of such nomination, to the decedent's estate. Here, there was a written designation nominating Carolyn Wheelon. The operation of the TRS is governed by statute, including the payment of death benefits. We feel that the stability of the system depends upon adherence to the statutory scheme. Therefore, we hold that the person nominated in the written designation is entitled to the proceeds except as discussed in the next issue.

Appellant contends that the evidence clearly showed decedent's intent was to have his surviving widow, Janet Sowell, take the proceeds and all other property owned by him. Appellant argues the holographic will clearly and unequivocally shows such intent. Respondent argues that if any exception be made to the provisions of § 19-4-1001, MCA, the exception be limited to the situation where intent is coupled with an overt act seeking to accomplish a change in the written designation so that all that remains to be done is a ministerial act.

The court's are divided concerning whether the designated beneficiary absolutely controls disposition of the survival benefits. Some courts take the position that the named beneficiary controls under all circumstances. See, Rogers v. Rogers (Fla. 1963), 152 So.2d 183; Kurtz v. Dickson (Va. 1953), 76 S.E.2d 219. Other courts have adopted a view that literal compliance with the regulation is not necessary.

6

However, before a deviation from the written nomination will be permitted, those courts require that an intent to change designation be coupled with some specific affirmative action evidencing a desire to make the change. Watenpaugh v. State Teacher's Retirement System (Cal. 1959), 336 P.2d 165; Aguilar v. United States (9th Cir. 1955), 226 F.2d 414. Appellant does not prevail on appeal under the more liberal view permitting one not named to take under limited circumstances. Here the trial court found there was no affirmative action evidencing decedent's desire to make a change. There is substantial credible evidence to support this finding on the part of the trial court. The record shows decedent never took steps to have the beneficiary changed on the forms.

The third issue presented to the Court is whether Janet Sowell had a marital interest in her deceased husband's pension trust which was vested and entitled her to claim against the designated beneficiary. It is well established in Montana that retirement, annuity, pension and profit-sharing benefits earned by either spouse during the marital relationship are part of the marital estate and subject to equitable division upon divorce. In re the Marriage of Glasser and Glasser (Mont. 1983), 669 P.2d 685, 40 St.Rep. 1518; In re the Marriage of Kis and Kis (1982), 196 Mont. 296, 639 P.2d 1151.

This Court has not been called upon to determine whether a surviving spouse has a vested interest in the pension funds accumulated by decedent. We have found no case from a foreign jurisdiction directly on point. In Valdez v. Ramirez (Texas 1977), 558 S.W.2d 88, the court held that under the community property laws of Texas, a wife was entitled to one-half of the retirement benefits as an "earned property

right." Likewise, the California Supreme Court in Life Insurance Co. of North America v. Cassidy (Cal. 1984), 676 P.2d 1050, held that the interest of a surviving spouse in life insurance proceeds could not be defeated by a gift of the proceeds to a third-party named as beneficiary without the surviving spouse's consent. The California court held that a spouse placed in this position could recover his or her community share in the proceeds.

Even though Montana recognizes that the pension fund of one spouse must be included in the marital estate at the time of a divorce action, we have not adopted the community property concept in this state. Property can be owned and separately controlled by one spouse without the permission of the other. We hold that, consistent with this separate ownership concept, a spouse has the right to nominate the beneficiary of retirement account proceeds without consultation or permission from the other spouse and can designate a beneficiary other than the spouse. Although the retirement account proceeds must be included as a marital asset at the time of divorce, at the time of death those proceeds can be excluded from the decedent's estate and from any claim by the survivor.

We affirm the judgment of the District Court.

Justice

We concur:

Chief Justice

8

_L. C. Gulbrandson._

_____

_____

_____

Justices


Mr. Justice John C. Sheehy, dissenting:

In my opinion, the marital dissolution agreement settled the rights of both parties fully and finally. I would therefore disregard the lack of change of beneficiary in this case.

_John C. Sheehy_
Justice

Mr. Justice John Conway Harrison joins in the dissent of Mr. Justice Sheehy.


Mr. Justice Daniel J. Shea dissents and will file a written dissent later.

DISSENT OF MR. JUSTICE DANIEL J. SHEA

No. 84-197

SOWELL V. TEACHERS' RETIREMENT SYSTEM

DATED: _January 6, 1985_

FILED

JAN 6 - 1985

_Ethel M. Harrison_
CLERK OF SUPREME COURT
STATE OF MONTANA

Mr. Justice Daniel J. Shea, dissenting:

I dissent. I would reverse the judgment of the trial court and order that plaintiff, Janet Sowell, is entitled to the retirement benefits of her deceased husband. I believe the majority applied the wrong law in reaching its result, and if it had applied the correct law, it would have reached the opposite result.

Although it is not dispositive of the entire issue, Soha v. West (Mont. 1981), 637 P.2d 1185, does apply, and its application requires a starting point from which it was the duty of the first wife (the defendant here), to prove that after the divorce and property dissolution, Larry Sowell by his conduct and words, intended that she remain the beneficiary of his retirement fund. Not a scintilla of evidence supports this conclusion (certainly not substantial evidence) and therefore the second wife, Janet Sowell, is entitled to the benefits of the retirement fund.

When the parties signed the property settlement agreement, they agreed that it was a final settlement, and that each would make no claim on the other's property. Larry Sowell had a retirement fund and his first wife had a retirement fund (in another system). At the time of divorce, these retirement funds became marital assets. Although not disposed of in the settlement agreement, based on the authority of Soha, supra, Larry's retirement fund no longer was a marital asset and his first wife's retirement fund was no longer a marital asset. Therefore, each no longer had a claim to the other's after the distribution agreement was approved by the trial court. The first wife withdrew her

retirement fund; unfortunately, Larry Sowell did not withdraw his, and even more unfortunately, he did not withdraw the name of his first wife as the designated beneficiary. As a legal consequence, however, this did not impose the burden of proof on the second wife.

Not a scintilla of evidence supports a finding that after the property settlement, Larry Sowell, by his acts and words, intended to leave the name of his first wife on the retirement fund as the designated beneficiary. To the contrary, all the circumstantial evidence supports a conclusion that Larry Sowell intended his second wife to receive all of _his_ property upon his death.

The majority, in effect, applies the wrong presumption. They require Janet Sowell, the second wife, to prove that Larry Sowell, by his acts and words, evinced an unequivocal intent to remove the first wife as the designated beneficiary. While I believe the record does demonstrate this intent, nonetheless, the majority in effect presumes that even after the marital settlement agreement, the first wife is entitled to the property simply because her name remained as the designated beneficiary. I would, on the other hand, apply a presumption that should apply under Soha, supra. We should have applied a presumption that Larry Sowell did intend that his first wife no longer have an interest in the retirement fund because she released this right as a result of the settlement agreement. Therefore, even if the first wife's name remained as the designated beneficiary after the settlement agreement was approved by the trial court, I would require the first wife to prove that Larry Sowell, by his acts and words after the property settlement, evidenced an unequivocal intent to continue her

as the designated beneficiary of <u>his</u> retirement fund.  That proof is manifestly lacking.

I therefore would vacate the judgment and order the benefits to go to the second wife, Janet Sowell.

                    _____
                              Justice