No. 89-492

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE ex rel. H. R. ROBERTS and
ELIZABETH ROBERTS, d/b/a H. R.
ROBERTS & SONS, INC.,

       Relators and Appellants,

   vs.

PUBLIC SERVICE COMMISSION OF
THE STATE OF MONTANA,

       Respondent and Respondent,

   and

WATKINS AND SHEPARD TRUCKING, INC.,

       Intervenor and Respondent.

APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis and Clark,
               The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

       For Appellants:

       W. William Leaphart argued, Helena, Montana

       For Respondents:

       Robin McHugh argued, Helena, Montana

       Stanley T. Kaleczyc argued, Helena, Montana

Submitted: March 13, 1990

Decided: April 13, 1990

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

H. R. Roberts and Sons appeals from an order of the First Judicial District Court, Lewis and Clark County, denying the appellant's petition for declaratory judgment and writ of mandamus. We affirm.

## ISSUES

1. Did the District Court err in holding that § 69-12-324(2), MCA, does not provide an exemption for all Class C carriers operating under government contracts?

2. Did the District Court err in not holding that the Montana Procurement Act preempts the Public Service Commission public convenience and necessity hearing requirement for the winner of a competitive bid, state contract?

3. Did the District Court err in holding that § 69-12-324, MCA, does not deny equal protection when it allows state contracted solid waste carriers to obtain certificates without a public convenience and necessity hearing while requiring state contracted commodities carriers to go through the hearing process?

## FACTS AND PROCEDURE

Appellant H. R. Roberts and Sons [hereinafter Roberts] underbid intervenor Watkins & Shepard Trucking, Inc. [hereinafter Watkins], by $150,000 on a statewide, three-year contract to haul United States Department of Agriculture surplus commodities for the Montana Office of Public Instruction [hereinafter OPI] school lunch

2

program. Watkins held the contract for the previous nine years and was the only carrier in Montana with the requisite USDA Commodities Class C certificate. Roberts held a Class C certificate, but under Public Service Commission [hereinafter PSC] procedure, could not obtain a USDA commodities endorsement until it had a commodities contract.

The OPI awarded Roberts the contract on June 16, 1989, on condition that Roberts obtain the USDA commodities endorsement by August 1. Roberts immediately applied to the PSC arguing that § 69-12-324, MCA, exempted all government contracted Class C carriers from the requirement of a public convenience and necessity hearing. The PSC refused to exempt Roberts. The agency interpreted § 69-12-324, MCA, as exempting only federally contracted passenger carriers and state contracted solid waste carriers. The PSC set a hearing for August 23--the earliest practical date under its notice and hearing regulations.

On July 14, Roberts filed the action now on appeal and Watkins intervened. Roberts asked the District Court to issue a writ of mandamus ordering the Public Service Commission to either issue the commodities endorsement without a hearing or to hold the hearing before the August 1 deadline. Roberts also requested a declaratory judgment that the exemption statute violated equal protection guarantees by giving preferential treatment to waste carriers over commodities carriers.

The District Court denied the writ of mandamus and entered declaratory judgment against Roberts. Following the August 1 deadline, the OPI rejected both Roberts' and Watkins' bids and, under the noncompetitive provisions of § 18-4-306, MCA, awarded the contract to Watkins as the sole source of contract services. Roberts now appeals the District Court's decisions.

HEARING EXEMPTION

Montana law requires the PSC to provide public notice and to hold a hearing on public convenience and necessity whenever a motor carrier applies for any class of certificate. Section 69-12-321, MCA. Section 69-12-324, MCA, grants exemptions from the hearing requirement. Roberts argues that the plain language of the exemption statute covers all Class C carriers operating under state or federal contracts. The PSC argues that the plain language of the statute exempts only federally contracted passenger carriers and state contracted solid waste carriers.

Subsections (1) and (2) of the statute read as follows:

> (1) The presentation of the written contract to the commission shall be deemed sufficient proof of public convenience and necessity in accordance with the terms and conditions contained within the United States government or state government contracts. Subject to the provisions of this section, a transportation movement is considered to be:
>
> (a) the transportation for hire of persons between two points within the state by a motor carrier pursuant to the terms of a written contract between the carrier and the United

4

States government or an agency or department thereof; or

(b) the transportation for hire of solid waste between two points within the state by a motor carrier pursuant to the terms of a written contract between the carrier and the state government or an agency or department thereof.

(2) The Class C certificate of public convenience and necessity issued pursuant to the terms and conditions of the United States government or state government contract may be issued by the commission upon receipt of an executed copy of the United States government or state government contract. The certificate of public convenience and necessity may be issued thereafter without requiring the commission to fix a time and place for public hearing.

Section 69-12-324, MCA.

The procedure for interpreting the statute is clear.

The judicial function in construing and applying statutes is to effect the intention of the legislature. In determining legislative intent, the Court looks first to the plain meaning of the words used in the statute. If intent cannot be determined from the content of the statute, we examine the legislative history.

Thiel v. Taurus Drilling Ltd. (1985), 218 Mont. 201, 205, 710 P.2d 33, 35.

The PSC asserts that the statute is plainly unambiguous. "[I]t is not necessary to resort to legislative history to interpret 69-12-324. The PSC has frankly been astounded by the statutory exegesis that the Roberts and the District Court have undertaken in an effort to grasp the meaning of a law that the PSC considers

5

plain on its face." We disagree with the PSC. Section 69-12-324, MCA, is so poorly written that its plain language appears to have no effect whatsoever. Subsections (1) and (2) speak of presenting "the" written contract without identifying the contract to which they refer. Subsections (1)(a) and (1)(b) define "transportation movement"--a term which cannot be found anywhere else in the Motor Carrier Act. Subsection (2) speaks of issuing a Class C certificate even though one of the two categories purportedly covered--solid waste carriers--is statutorily defined as a Class D carrier. Section 69-12-301(5), MCA. Like the District Court, we find it necessary to engage in some "statutory exegesis" to determine what the legislature intended.

The current confused nature of the exemption statute, and the present issue, appear to be the direct result of numerous amendments and procedural recodification of the exemption statute and related provisions of the Montana Motor Carrier Act. The Act originally defined Class C carriers as including all carriers operating under contract. Section 3847.2, RCM (1935). Section 3847.10, RCM (1935), required Class C carriers to apply for a certificate of convenience and necessity which could be issued only after a public hearing. The 1971 Legislature added a subsection to the statute, then codified at § 8-110, RCM (1947), exempting from the hearing requirement Class C carriers operating under United States government contracts to transport persons or

6

commodities. Act approved February 27, 1971, ch. 69, § 1, 1971 Mont. Laws 506, 508-09. The 1975 Legislature amended the new subsection extending the exemption to carriers operating under state contracts to haul solid waste. Act approved March 27, 1975, ch. 179, § 1, 1975 Mont. Laws, 315, 316. The 1977 Legislature amended the Act's classification system creating the D classification for waste carriers. Act approved March 25, 1977, ch. 138, § 1, 1977 Mont. Laws 466, 467. During the 1979 change from the Revised Codes of Montana to the Montana Code Annotated, the hearing exemptions were recodified in § 69-12-324, MCA. In 1983, the Legislative Audit Committee rewrote § 69-12-324, MCA, and other statutes as part of a Sunset Audit of the PSC statutes. Act approved April 19, 1983, ch. 588, § 15, 1983 Mont. Laws 1394, 1402.

All of this legislative tinkering has produced three underlying problems which obscure the meaning of the exemption statute. First, the enumeration of the current exemption statute gives the false impression of an exemption for all government contracted Class C carriers. The original exemption in § 8-110(2), RCM (1947), contained three unnumbered paragraphs. The first paragraph provided that the transportation of passengers or commodities under United States government contract was subject to all provisions of the Montana Motor Carriers Act except that presentation of such a contract was sufficient proof of convenience and necessity. The second paragraph provided that a certificate could be issued

7

without convening a hearing. The third paragraph provided the duration of the certificate and is not presently at issue. In the original exemption statute, the second and third paragraphs merely filled out the procedural details of the exemptions provided in the first paragraph.

During the 1979 general recodification, the three paragraphs were enumerated (1), (2), and (3). Roberts now contends that subsection (2) creates an exemption in addition to those set out in subsection (1). However, as Watkins argues, the supplementary function of subsection (2) is still apparent in the current version of the paragraph. Subsection (2) refers twice to "the . . . government contract." "The" refers to the contract originally described in subsection (1).

Second, subsection (2)'s reference to Class C carriers gives the impression that it creates an exemption in addition to those granted in the first paragraph. Roberts argues that because subsection (2) refers to Class C carriers, it creates an exemption separate from that extended to solid waste carriers who are statutorily defined as Class D carriers. The PSC argues that, when they transport under state contract, solid waste carriers change from Class D to Class C. Regardless of how the PSC categorizes them, under the plain language of the statutes, contracted solid waste carriers fall within both classes; Class C covers all

8

contract carriers, § 69-12-301(4), MCA, and Class D covers all solid waste carriers, § 69-12-301(5), MCA.

The exemption statute confuses the classifications. It has always referred only to Class C carriers. When the 1975 Legislature extended the exemption to state contracted solid waste carriers, they fell only under Class C. Section 8-102(a), RCM (1947). However, when the 1977 Legislature created the new D classification, it failed to provide a corresponding amendment to the exemption statute. Furthermore, when the 1977 Legislature created Class D, it passed a companion statute prohibiting Class A, B, and C carriers from hauling waste. Act approved March 25, 1977, ch. 138, § 2, 1977 Mont. Laws 466, 467. The result was an exemption statute which purported to exempt solid waste carriers but referred to them as Class C carriers--a classification that was statutorily prohibited from carrying solid waste.

The 1983 Sunset Audit of the PSC statutes produced an oblique reference to the exemptions statute which partially corrected the inconsistencies. It amended the prohibition against waste hauling by Classes A, B, and C to read:

> Except as provided in [the exemption sta-tute], no Class A, B, or C carrier will be authorized or permitted to transport . . . waste . . . .

Act approved April 19, 1983, ch. 588, § 16, 1983 Mont. Laws 1394, 1403 (emphasis indicates amendment). In spite of the plain

9

language of the classification statutes, the Audit Committee apparently assumed that Class D carriers become Class C carriers when operating under government contract.

Third, the Audit Committee also exacerbated the confusion by defining the term "transportation movement," in subsection (1) of the exemption statute. Prior to 1983, the statute provided that, with the exception of the hearing requirement, the transportation of passengers and commodities under United States government contract, and the transportation of solid waste under state government contract, "shall be deemed a transportation movement subject to the provisions of this chapter." Section 69-12-324(1), MCA (1981). The obvious purpose of the phrase was to ensure that, even though the carriers were exempted from the hearing requirement, they were still subject to all other provisions of the Montana Motor Carrier Act. In an apparent attempt to simplify the statute, the Audit Committee turned this phrase on its head. Act approved April 19, 1983, ch. 588, § 15, 1983 Mont. Laws 1394, 1402. It now reads, "Subject to the provisions of this section, a transportation movement is considered to be . . . ." Instead of making the designated contract carriers subject to the provisions of the Motor Carrier Act, it now defines "transportation movement" as including the designated contract carriers. The definition has no apparent purpose since "transportation movement" appears nowhere

10

else in the current or previous versions of the exemption statute, the Motor Carrier Act, or the administrative regulations.

The end product of these piece-meal amendments is a set of statutes which is, in various parts, inconsistent, contradictory, and superfluous. The meaning of the exemption statute is so obscure that Roberts can now make a plausible argument that it exempts from the hearing requirement all Class C contract carriers. The bottom line, however, is that the District Court was correct; there is no evidence that the legislature ever intended to create such an exemption. To the contrary, during the 1983 Sunset Audit, the PSC presented the legislature its uncontested interpretation of § 69-12-324, MCA, as exempting only federally contracted passenger carriers and state contracted solid waste carriers. Mont. Public Service Comm'n. Summary of the Legislative Audit Comm. Bill: S.B. 436, at 4, House Admin. Comm., March 14, 1983; Mont. Public Service Comm'n. Statement in Support of S.B. 436, exhibit no. 4, Senate Business and Industry Comm., February 19, 1983.

We hold that whatever § 69-12-324, MCA, does, it does not create a blanket exemption from the public convenience and necessity hearing for all government contracted Class C carriers.

We invite, with some trepidation, the legislature to again consider the Motor Carrier Act. Carriers such as Roberts should be able to determine their rights and responsibilities by reading

the plain language of the statutes. Presently that is not the case.

## PREEMPTION

The Montana Procurement Act [hereinafter MPA] and the PSC's public convenience and necessity hearing serve distinct purposes. The MPA requires state agencies to purchase most supplies and services through a competitive bid procedure. Section 18-4-302(1), MCA. The MPA is intended, among other things, to promote free enterprise competition. Section 18-4-122(7), MCA. In the PSC's public convenience and necessity hearing, on the other hand, competition is not a factor. Section 69-12-323(2)(a), MCA, requires the PSC to address three issues before granting additional operating authority.

> a) First, the Commission must determine that "public convenience and necessity require the authorization of the service proposed." This necessarily will include consideration of the existing service.
>
> b) Second, the Commission must consider the ability and dependability of the applicant to meet any perceived additional public need.
>
> c) Third, the Commission must consider the impact that the proposed service would have upon existing transportation services.

In re Application of Sullivan (Dep't. of Public Service Regulation, July 2, 1985), Docket No. T-8752, Order No. 5388, at 5. Roberts argues that because the MPA promotes competition whereas the PSC

12

protects the existing carrier, the MPA preempts the PSC's hearing requirement.

We disagree with Roberts. Having a contract to operate is not equivalent to having a license to operate. The competitive policy of the MPA and public convenience and necessity hearing are complementary. The MPA ensures that the carrier will provide the services at the lowest reasonable price while the PSC hearing ensures that the carrier is capable of performing the contract and that a new carrier is in the public's best interests. To be awarded an MPA contract, the bidder must be a "responsible bidder," with "the capability in all respects to perform fully the contract requirements and the integrity and reliability which will assure good faith performance." Sections 18-4-301(7) and -303(6), MCA. By awarding the contract to Roberts subject to issuance of a Class C commodities endorsement, the OPI implicitly recognized that Roberts had not yet demonstrated its ability to perform and its desirability as a replacement carrier. Furthermore, as the more specific statutes, the Motor Carrier Act governs over the MPA in the regulation of motor carriers. See § 1-2-102, MCA.

We hold that award of a contract under the Montana Procurement Act does not in itself excuse the winning carrier from a public convenience and necessity hearing under the Motor Carrier Act.

## EQUAL PROTECTION

Roberts argues that by exempting state contracted solid waste carriers but not state contracted commodities carriers from the PSC hearing requirement, § 69-12-324, MCA, violates its right to equal protection. In State v. Jack, this Court identified three issues that must be considered in determining whether a statute violates the right to equal protection:

> (1) whether the statute is a legitimate and proper exercise of governmental authority; (2) the basis of the classification and an identification of the persons covered thereunder; and (3) the proper standard of review or scope of judicial inquiry regarding the relationship between the classification and the objectives of the law.

Jack (1975), 167 Mont. 456, 459, 539 P.2d 726, 728. Roberts does not contend that the regulation of motor carriers is not a legitimate exercise of state authority.

The parties do disagree on the basis of the classification. The PSC argues persuasively, and the District Court agreed, that the legislature has very good reasons for regulating contract carriers in a distinct manner from common carriers. We agree with Roberts, however, that that classification is not at issue in the present case. Here, § 69-12-324, MCA, distinguishes between different contract carriers. Specifically, the statute grants an exemption to state contracted solid waste carriers while denying an exemption to state contracted commodities carriers.

14

The third issue is whether this classification has a rational basis. See Jack, 167 Mont. at 461, 539 P.2d at 729. We hold that it does. Unlike commodities carriers, solid waste carriers are subject to oversight by the Department of Health and Environmental Sciences. The legislature gave that Department broad authority to establish and administer waste disposal systems, § 75-10-104, MCA, including regulation of solid waste transportation, § 75-10-204(3), MCA. The Department has established minimal standards for solid waste transportation, see § 16.14.523, ARM, and has the authority to inspect carriers, § 16.14.525, ARM, and to enforce compliance, § 16.14.526, ARM. When a contract to haul solid waste is issued, the public's need for a new carrier and the carrier's ability to perform in compliance with the Department's regulations should already have been determined.

The OPI has the authority to enter contracts for the distribution of commodities and, theoretically, to regulate and oversee their performance. Sections 20-10-201(3)(a), and -203, MCA. Issuing transportation contracts, however, is a small adjunct to the OPI's primary function of providing educational services. The OPI is not an agency expected to oversee motor carriers.

We hold that the difference between the agencies' abilities to evaluate and regulate transportation companies provides a reasonable basis for granting an exemption to state contracted solid waste carriers and not to state contracted commodities

15

carriers. The disparate treatment does not violate Roberts's right to equal protection.

## CONCLUSION

Roberts has been caught in a classic Catch-22 created by conflicting PSC and OPI requirements. PSC procedures prevented Roberts from obtaining a commodities endorsement until it had a contract. OPI requirements made the contract conditional on Roberts securing the endorsement by August 1--a deadline PSC procedures made impossible. In this situation, Roberts could never replace the existing carrier regardless of how capable or cost effective a carrier it might be.

The solution, however, is not for this Court to rewrite the regulatory legislation as Roberts suggests. The solution is for the agencies to consider their overlapping requirements and to tailor their procedures accordingly. The OPI could have taken bids on their commodities contract at an earlier date. The PSC could have initiated its notice and hearing procedure when Roberts entered a bona fide bid. The agencies' lack of foresight and flexibility may have harmed the appellant and cost taxpayers an extra $150,000 by effectively nullifying Roberts's low bid.

Affirmed.

_____
Chief Justice

We concur:

_____

_William E. Hunt_

_Diane G. Ba_

_P. C. McDonough_

_____

Justices

_L. C. Gulbrandson_ ,

Hon. L. C. Gulbrandson, Retired
Justice, sitting in place of
Justice John C. Sheehy

17

Justice John Conway Harrison, specially concurring.

While I concur with the majority opinion in this case, I find the result appalling to appellant Roberts. He found himself in a "Catch-22" situation, caught between two departments of State government whose internal regulations prevented him from getting the bid to which he was entitled. Had the Office of Public Instruction possessed the foresight to check with the Public Service Commission, Roberts would have been able to meet the time specifications.

As noted in the opinion, this is caused by the piecemeal amendments of our statutes which are, in various parts, inconsistent, contradictory and superfluous. In this opinion we ask that the legislature again try to correct such a holding as this by amending the Motor Carrier Act so that carriers such as Roberts can determine their rights and responsibilities, and at the same time bring some relief to the taxpayers who face the additional costs resulting from the holding in this case.

_John Conway Harrison_
Justice