No. 94-220

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

UNITED STATES OF AMERICA,

       Plaintiff and Respondent,

  v.

ROBERT ALLAN BROOKS,

       Defendant and Appellant.

FILED

FEB 24 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

ORIGINAL PROCEEDING:     Certified Question from the Missoula Division of the United States District Court, District of Montana, The Honorable Charles C. Lovell, Judge presiding

COUNSEL OF RECORD:

     For Appellant:

          Edmund F. Sheehy, Jr. (argued),
          Cannon & Sheehy, Helena, Montana

     For Respondent:

          Sherry Scheel Matteucci, United States Attorney,
          Robert J. Brooks (argued), Assistant
          United States Attorney, Butte, Montana

     For Amicus Curiae:

          Lois Adams and David L. Ohler, Legal Counsel,
          Department of Corrections & Human Services,
          Helena, Montana

Submitted:   October 4, 1994

Decided:   February 24, 1995

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Defendant Robert Allan Brooks argues in the Missoula Division of the United States District Court, District of Montana, that he was not deprived of his civil and constitutional rights to possess a firearm while under the supervision of the Montana Department of Corrections Probation and Parole Division. The Federal Court certified the question to this Court for consideration and decision. We hold that under the facts of this case, defendant was not deprived of his civil and constitutional rights.

On May 9, 1994, the Federal Court filed an order in this Court certifying for consideration and decision the following question:

> Whether a criminal defendant was deprived of his civil and constitutional rights to possess a firearm while he was on probation under the following circumstances:
>
> a. the Montana sentencing court in his felony judgment of conviction did not impose a condition of probation that the defendant could not possess a firearm, but rather ordered him to comply with all terms and conditions established by the Probation and Parole Division of the Department of Corrections; and
>
> b. at the time of the sentencing, the Department of Institutions of the State of Montana had in effect an administrative rule establishing conditions of probation that included a condition denying probationers the right to own, possess, or control a firearm.

By order filed May 17, 1994, this Court accepted jurisdiction of the certified question and stated that "[t]his Court will decide the certified question on the basis of the facts forwarded by the said [Federal] District Court . . . ." Those facts are as follows:

On January 6, 1989, the Lake County District Court adjudged Brooks guilty of the offense of theft. Brooks received a five-year

2

suspended sentence.  The District Court did not impose a condition of probation that Brooks could not possess a firearm.  However, as a condition of probation, the District Court placed Brooks under the jurisdiction of the Probation and Parole Division of the Department of Corrections (Probation Division) and ordered that he comply with all terms and conditions established by the Probation Division.

Brooks signed a standard Probation Division form containing the conditions of his probation and parole.  The form provides in pertinent part:

> 8. WEAPONS: You shall not own, possess or be in control of any firearm or deadly weapon as defined by state statute.  The Federal Gun Control Act of 1968, prohibits any person who is under indictment or has been convicted of a felony to possess or carry a firearm while engaged in any act or sporting activity such as hunting.

Brooks was subsequently indicted in Federal Court on different charges.  Count I of the indictment alleged that Brooks was a felon in possession of a firearm, in violation of federal law.  Prior to trial, Brooks moved to dismiss Count I on the ground that, as a matter of law, he had not been "convicted of a crime punishable for a term exceeding one year," as that term is defined by federal law.  The Federal Court entered an order reserving ruling on the issue pending further proof by the government.  At trial, the Federal Court found that the government put forth sufficient proof, and Brooks' motion to dismiss was denied.  The jury returned guilty verdicts on both counts of the federal indictment.  Brooks has filed a motion for a new trial, again arguing that he does not fit

3

within the federal definition. The Federal Court has not rendered sentence and judgment pending this Court's resolution of the certified question.

At the time Brooks was convicted in state district court, the Department of Corrections had in effect, pursuant to 10.7.1101(8), ARM, a standard condition forbidding probationers from possessing firearms. The Federal Court heard testimony at trial that the Probation Division was required to apply the standard condition to every probationer. Since the Probation Division was required by administrative rule to impose the "no firearm" condition in every case, the Federal Court "assumed that the sentencing judge was aware of the regulation and thus, as a prerequisite to imposing the condition to abide by the conditions of the Probation Division, determined that Defendant's right to possess a firearm should be suspended."

Our function in construing and applying statutes is to effect legislative intent. State ex rel. Neuhausen v. Nachtsheim (1992), 253 Mont. 296, 299, 833 P.2d 201, 204; State ex rel. Roberts v. Public Service Com'n of State of Montana (1990), 242 Mont. 242, 246, 790 P.2d 489, 492. In determining that intent, we look first to the plain meaning of the words used in the statute. Stansbury v. Lin (1993), 257 Mont. 245, 249, 848 P.2d 509, 511; Roberts, 790 P.2d at 492. If the Legislature's intent can be determined from the plain meaning of the statute's words, we will look no further. Neuhausen, 833 P.2d at 204. It is only when the intent

4

cannot be determined from the language of the statute that we will examine the legislative history. <u>Roberts,</u> 790 P.2d at 492.

The plain language of § 46-18-801(1) and (2), MCA, specifically vests in the sentencing judge the power to deprive a convicted offender of civil or constitutional rights:

> (1) Conviction of any offense shall not deprive the offender of any civil or constitutional rights except as they shall be specifically enumerated <u>by the sentencing judge</u> as necessary f the sentence directed toward the objectives of rehabilitation and the protection of society.
> (2) No person shall suffer any civil or constitutional disability not specifically included <u>by the sentencing judge</u> in his order of sentence.

(Emphasis added.) The plain language of these subsections also requires any such deprivation to be "specifically enumerated" and "specifically included" in the sentencing order.

Whether the Probation Division is required by administrative rule to impose the "no firearm" condition in every case, or whether the state district court was aware of the standard Probation Division conditions, does not change the clear mandate of § 46-18-801, MCA. The statute explicitly requires the sentencing judge to specifically enumerate and specifically include any civil or constitutional deprivation in the sentencing order. Imposing a condition of sentence which assigns a convicted offender to the supervision of the Probation Division does not meet the statutory requirements.

Because the language of § 46-18-801(1) and (2), MCA, is clear on its face, we do not look beyond that language to interpret the statute. <u>Neuhausen,</u> 833 P.2d at 204.

5

In answer to the certified question, we hold that, because the sentencing court did not specifically enumerate and specifically include in the sentencing order that Brooks was prohibited from possessing a firearm, the Probation Division of the Montana Department of Corrections and Human Services could not and did not deprive him of that right as a condition of probation.

_____
                Justice

We concur:


_____
        Chief Justice


_____


_____
                Justices


District Judge Thomas C. Honzel,
sitting for Justice John C. Harrison

Justice James C. Nelson specially concurring:

I concur that the defendant was not deprived of his civil or constitutional right to carry a firearm by the inclusion of that prohibition in his probation agreement or by Department of Corrections rule 20.7.1101(5), ARM. Section 46-18-801(1) and (2), MCA, is clear on that point; the power to deprive an offender of a civil or constitutional right or to impose a civil or constitutional disability as a condition of sentence is reserved to the district court and requires specific enumeration by the sentencing judge.

However, in light of that conclusion and in fairness to probation officers who must continue to supervise probationers and parolees, many of whom are under supervision for violent crimes or for offenses committed with weapons, I believe that it is necessary that we also point out that it does not follow from our opinion that probationers and parolees may now begin carrying weapons contrary to the provisions of their probation agreements.

The exercise of the civil and constitutional right to bear arms found in the Second Amendment of the United States Constitution and at Article II, Section 12 of the Montana Constitution, like any civil liberty or constitutional right, may be waived or restricted with the agreement and consent of the person to whom the right inures. As a sentencing condition the court, here, required the defendant to report to the probation department, to sign rules and conditions of probation and to set up a reporting schedule with the probation officer. The defendant did

7

that, and he signed a probation agreement pursuant to which he agreed and consented to certain restrictions on his civil liberties and constitutional rights during the term of the agreement, including, among others, a restriction on his right to possess weapons. The defendant agreed and consented to those restrictions in order to gain the benefit of probation rather than remain incarcerated.

The weapons (and other) restrictions imposed under the defendant's probation agreement remain valid and fully enforceable because the defendant agreed, for a certain period of time, to certain limitations on his exercise of constitutional rights and civil liberties of which he had not been deprived. This interpretation is consistent with dicta in the recent case of U. S. v. Wryn (9th Cir. 1991), 952 F.2d 1122. In that case the defendant was convicted in federal court of conspiracy to distribute and possession with intent to distribute LSD, based in part, on his state probation officer's discovery of that drug in his house during a warrantless search. On appeal, the Ninth Circuit noted that the Montana Department of Institutions administrative rule and the defendant's probation agreement specifically required court approval for the probation officer's warrantless search of the probationer's residence without his consent. The court held that since there had not been court approval for the warrantless search, the search was invalid. In so holding, however, the court observed that,

> had the warrantless search of the probationer Wryn's home
> been authorized by either Montana state law or by Wryn's

probation agreement we would consider the search "reasonable" under the fourth amendment.

Wryn, 952 F.2d at 1124. (Emphasis added.)

In the instant case, while the sentencing court did not deprive the defendant of his civil and constitutional right to bear arms under § 46-18-801(1) and (2), MCA, the probation agreement which he signed restricted his exercise of that right, and that restriction, accordingly, remains valid and fully enforceable under the terms of the agreement.

_____
                                                Justice

Justice Karla M. Gray concurs in the foregoing special concurrence.

_____
                                                Justice

Chief Justice J. A. Turnage, dissenting:

I respectfully dissent.

This Court's interpretation of § 46-18-801, MCA, and its application to the District court's judgment of the felony conviction of Robert Allen Brooks, Lake County Cause No. DC-88-72, dated January 6, 1989, is wrong

The District Court did impose a condition of probation that Brooks could not possess a firearm. The District Court judgment in relevant part stated:

> 1. That the Defendant be placed under the jurisdiction of the Adult Probation and Parole Division of the State of Montana Department of Institutions and <u>that he comply with all of the terms and conditions established by said Division</u>.

> 10. That the Defendant <u>shall report to the Probation Department immediately after the release from the Court for the purpose of signing rules and conditions of probation,</u> and to set up a reporting schedule with a Probation Officer. [Emphasis added.]

Brooks on January 12, 1989, in the presence of his probation and parole officer, signed a document entitled, "Conditions of Probation and Parole," which in relevant part provided:

> 8. <u>WEAPONS:</u> You shall not own, possess or be in control of any firearm or deadly weapon as defined by state statute. The Federal Gun Control Act of 1968, prohibits any person who is under indictment or has been convicted of a felony to possess or carry a firearm while engaged in any act of sporting activity such as hunting.

> .    .

> AGREEMENT BY PROBATIONER/PAROLEE

> I understand that this Probation/Parole is granted to' and accepted by me, subject to the conditions, limitations, restrictions stated herein, and with the knowledge that the Board of Pardons, Sentencing Court, or

10

the Department of Institutions have the power, at any time, in case of violation of the conditions, **limitations** and restrictions of Probation or Parole to cause my detention and/or return to prison. <u>I have read, or have had read to me, the foregoing conditions of my proba-tion/parole. I fully understand them and I agree to abide by and strictly follow them, and fully understand the penalties involved should I in any manner violate the foregoing conditions, limitations and restrictions.</u> [Emphasis added. ]

The **majority** of this Court correctly states that this Court's function in construing and applying statutes is to effect legislative intent but from that point they go astray.

The legislature will be amazed at what we conclude to be its intent in this case. By what I submit to be a hypertechnical interpretation of § 46-18-801, MCA, arrived at without fully discussing or considering the relevant parts of the District Court judgment and the agreement by probationer/parolee Brooks and with no case law citation from any other jurisdiction that provides persuasive precedent, the majority has reached a wrong conclusion.

The Supreme Court of Arizona reached a logical and persuasive conclusion in a probation case by allowing incorporation by reference of conditions of probation. State of Arizona v. Stotts (Ariz. 1985), 695 P.2d 1110. Appellant Stotts was convicted of felony aggravated assault. In his sentencing order, the trial judge set out three conditions for probation:

"(1) That he be returned through the Washington State Parole hold' to enter Washington Correctional Center;

"(2) That he be accepted at the Western State Hospital for evaluation and inpatient treatment, and

"(3) That he follow all the conditions required by the [Arizona] Probation Department."

11

Stotts, 695 P.2d at 1116. The Arizona Supreme Court went on to conclude that Stotts was bound by conditions of probation which were imposed on him after sentencing, stating:

> Appellant received no written copy of any conditions of probation at the time of his sentence. In November of 1978, however, the State of Washington applied for an Interstate Compact with Arizona. In this application for Interstate Compact that he signed, appellant agreed to make his home at Western State and to return to Arizona when duly instructed by proper authorities. Appellant also agreed to comply with the conditions of probation as fixed by both Arizona and Washington. Subsequently, in April of 1979, appellant signed and apparently received a copy of an Interstate Compact with Conditions of Probation. He signed and apparently received more conditions in July of 1981. His probation was revoked because of a violation of one of these subsequent written conditions.

> Though we emphasize that all probationers should receive written conditions at the time probation is imposed, we do not find the failure to do so in this case invalidated the probation revocation. A combination of four factors justifies this conclusion: first, though appellant's original "unwritten probation" was, upon imposition, unenforceable by revocation, it was valid; second, the subsequent furnishing with appellant of written conditions and his signing of those conditions cured the probation's unenforceability; third, the subsequent written conditions were not more burdensome than the unwritten conditions; and, fourth, there were no due process violations in basing revocation upon the subsequent written conditions.

Stotts, 695 P.2d at 1116.

Clearly, in the present case, the District Court's judgment properly incorporated by reference paragraph 8 of the Conditions of Probation and Parole, a condition lawfully adopted under the Montana Administrative Procedures Act

The majority's unduly restrictive interpretation and application of § 46-18-801, MCA, renders it in direct opposition to other code sections relating to probation and parole. The legislature

12

has specifically granted the Department of Corrections and Human Services the authority to adopt rules which govern parolees, probationers, and inmates on supervised release. Section 46-23-218, MCA, states:

> Authority of board to adopt rules. The board may adopt any other rules it considers proper or necessary with respect to the eligibility of prisoners for parole, the conduct of parole hearings, <u>and conditions to be imposed upon parolees.</u> [Emphasis added.]

Inmates on supervised release are likewise subject to conditions which are not set out verbatim by the sentencing judge. <u>See</u> § 46-23-405, MCA (authorizing the Department of Corrections and Human Services to establish rules governing inmates on supervised release programs). Like conditions of probation, conditions placed on parolees and individuals on supervised release programs are **ultimately** the result of that individual's criminal conviction.

Under the majority's interpretation of § 46-18-801, MCA, such conditions cannot be delegated to the Department of Corrections and Human Services, but rather **must** be set by the sentencing judge. Such an interpretation defeats the purpose of those statutes which authorize the Department of Corrections and Human Services to set conditions.

The majority correctly points out that we **must** construe statutes to effect the legislature's intent. In light of the fact that the legislature empowered the Department of Corrections and Human Services to establish reasonable conditions of parole, probation, and supervised release, the legislature certainly did not intend § 46-18-801, MCA, to nullify this power.

13

By incorporating by reference the conditions of probation, the sentencing judge properly restricted Brooks's right to possess a firearm. Such an interpretation is consistent with § 46-18-801, MCA, and does not frustrate those statutory provisions which empower the Department of Corrections and Human Services to set reasonable conditions of probation, parole and supervised release.

The majority holding that the district courts of Montana are prohibited from incorporating by reference reasonable and rational probation and parole rules lawfully adopted to the Montana Administrative Procedures Act, when those conditions are agreed to and signed by the probationer/parolee, will work irreparable harm to the management of an overburdened probation system. Judicial proceedings will follow this opinion challenging what most certainly are many district court judgments of felony convictions and provisions relating to parolees.

I would answer the certified question by stating that Brooks was lawfully denied the right to possess a firearm during the period of his probation for a felony conviction.

_____
Chief Justice

Justice Fred J. Weber joins in the dissent of Chief Justice Turnage.

_____
Justice

14