NO. 93-295

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

JANET HAMAN, d/b/a
RAINBOW DISTRIBUTING,

      Plaintiff and Respondent,

-vs-

STATE OF MONTANA,

      Defendant and Appellant.

FILED

DEC 16 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Ninth Judicial District,
In and for the County of Teton,
The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Robert F. W. Smith, Assistant Attorney General,
Gambling Control Division, Helena, Montana

     For Respondent:

          Kirk D. Evenson; Marra, Wenz, Johnson & Hopkins,
Great Falls, Montana

Submitted on Briefs: October 21, 1993

Decided: December 16, 1993

Filed:

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Janet Haman (Haman) d/b/a Rainbow Distributing sought a declaratory judgment to reverse a decision by the State Gambling Control Division, which concluded that Haman could not obtain a license to purchase and export illegal gambling devices commonly known as pull tabs or break-open tickets. The Ninth Judicial District Court, Teton County, granted summary judgment in favor of Haman and granted her a license effective July 15, 1992. The State appeals. We reverse.

On July 12, 1991, the State received a license application from Haman. Haman sought a license "to manufacture gambling devices that are not legal for public play in the state and are manufactured only for export from the state." See § 23-5-152(3)(a), MCA. Across the front of the application were these words: "To distribute pull tabs outside of Montana."

The State attempted to clarify the activity for which Haman sought the license. Subsequently, Haman was notified that she would not be granted a license if she intended to purchase pull tabs, which were not legal for public play in the state (Montana-illegal), from a manufacturer in Montana and then export those pull tabs out of the state.

Haman contacted her attorney, who attempted to persuade the State to change its decision. Haman's attorney and the State discussed the application on many occasions. Finally, the parties requested that the District Court answer the legal question of

2

whether § 23-5-152(3), MCA, permitted the State to license Haman's proposed activities. The controversy centered on whether the statute specifically authorized a person to purchase Montana-illegal pull tabs in Montana (emphasis added).

The parties proceeded under the Montana Administrative Procedure Act, § 2-4-702, MCA, which allows a district court to grant a declaratory judgment when the parties dispute the interpretation of a statute. The parties submitted a stipulation of the facts and legal issues along with Haman's complaint for declaratory judgment.

Both parties moved for summary judgment. On February 12, 1993, the District Court granted Haman summary judgment because no rule specifically existed which precluded the State from granting her a license. Further, the court retroactively granted Haman a license effective July 15, 1992.

Although both parties raised several issues, we determine that one issue is dispositive: Whether the District Court erred by granting Haman a license pursuant to § 23-5-152(3), MCA, when it justified its decision by declaring that no specific rule prevented the State from granting Haman a license to conduct her proposed activities.

Gambling is a highly regulated activity in Montana. In examining gambling statutes, we are mandated to strictly construe the statutes to only allow gambling activity which is specifically authorized by the statutes. Section 23-5-111, MCA. Article III, § 9 of Montana's 1972 Constitution states that:

[a]ll forms of gambling, lotteries, and gift enterprises are prohibited unless authorized by acts of the legislature or by the people through initiative or referendum.

Further, § 23-5-111, MCA (1991), states:

In view of Article III, section 9, of the Montana constitution, Chapter 642, [the gambling] Laws of 1989, must be strictly construed by the department [of Justice] and the courts to allow only those types of gambling and gambling activity that are specifically and clearly allowed by Chapter 642, [the gambling] Laws of 1989.

Here, the District Court noted the constitutional and statutory directives of strict construction and specific authorization. The court, however, failed to follow these directives. Instead, the court granted **Haman** summary judgment because "[t]he Department has never adopted a rule to specifically permit [the] denial of a license in the factual situation of this case."

Strict construction and specific authorization do not require "a rule to specifically permit [the] denial of a license . . . ." Rather, these directives require a gambling statute to specifically authorize the proposed activity: here, the in-state purchase of Montana-illegal pull tabs. We hold that the District Court erred by inverting the constitutional and statutory directives of strict construction and specific authorization.

**Haman** contends, however, that § 23-5-152(3)(b), MCA (1991), authorized her to purchase the pull tabs in Montana and export them out-of-state. Section 23-5-152(3)(b), MCA (1991), states:

A person may not <u>manufacture or Possess</u> an illegal gambling device for export from the state without having obtained a license from the department [of Justice]. [Emphasis added.]

4

**Haman** maintains that the disjunctive **"or"** allows a person to both manufacture and possess illegal gambling devices. She argues that inherent in the word "possess" is the implication that a person can <u>purchase</u> illegal gambling devices within Montana (emphasis added). She concludes that § 23-5-152(3)(b), MCA **(1991)**, specifically authorized her to purchase and export Montana-illegal pull tabs and, therefore, she argues that the State should have created administrative rules which would have allowed her to obtain a license. We disagree.

We are guided by the directives of strict construction and specific authorization. The proposed activity is either specifically authorized or it is not. Further,

> **"[i]n** construing a statute, it is our function as an appellate court to ascertain and declare what in terms or in substance is contained in a statute and not insert what has been omitted." State v. Crane **(1989)**, 240 Mont. 235, 238, 784 **P.2d** 901, 903. Whenever possible, this court is to look to the plain meaning of the statute in determining legislative intent. State ex rel. Roberts v. Public Service Commission **(1990)**, 242 Mont. 242, 790 **P.2d** 489.

Holly Sugar v. **Dep't** of Revenue **(1992)**, 252 Mont. 407, 412, 830 **P.2d** 76, 79.

A plain reading of § 23-5-153(3)(b), MCA **(1991)**, reveals that **Haman's** proposed activity--purchasing Montana-illegal pull tabs within Montana--is not authorized. The word **"purchase"** is not encompassed in the word **"possess."** Since **"purchase"** does not exist in the statute, we refuse to insert that word into the statute. We hold that § 23-5-152(3)(b), MCA **(1991)**, does not specifically allow a person to "purchase" Montana-illegal pull tabs in Montana.

5

Moreover, § 23-5-152(3)(a), MCA, states:

> The department [of Justice] may adopt rules to license persons to <u>manufacture</u> gambling devices that are not legal for public play in the state and <u>are manufactured only for export</u> from the state. [Emphasis added.]

Section 23-5-152(3)(a), MCA, is clear: Montana manufacturers can only export gambling devices, they cannot sell gambling devices in the State of Montana. Thus, it necessarily follows that persons and companies in Montana cannot purchase gambling devices from Montana manufacturers.

In this case, Haman proposed to purchase pull tabs from World-Wide Ticket, a Montana manufacturer. World-Wide Ticket cannot sell pull tabs to in-state buyers. Thus, there is no possible way for Haman to legally purchase pull tabs from World-Wide Ticket.

While the District Court relied on Haman's argument that the State should have made administrative rules allowing her to obtain a license, we will not fall into the same trap. The State is only required to proceed to rule-making when a gambling statute specifically authorizes the gambling activity. See §§ 23-5-111 and -115(1), (2) and (3), MCA; § 2-4-301, MCA.

Here, § 23-5-152(3)(b), MCA (1991), does not specifically authorize the in-state purchase of pull tabs. Accordingly, we hold that the statute does not compel the State to establish rules for the licensing of persons who purchase Montana-illegal pull tabs within the state.

We reverse the decision of the District Court. We remand this case and direct the court to render a decision consistent with this opinion.

6

Reversed and remanded.

We concur:

_____
Chief Justice

_____

_____

_____
Justices

_____
Justice

Justices William E. Hunt, Sr., and Terry N. Trieweiler specially concurring.

We concur in the results of the majority opinion, but not with all that is said therein.

_____

_____
Justices

7

Justice James C. Nelson specially concurs.

While I agree with the result of the Court's opinion and with what is expressed therein, I am not persuaded that the statutory basis which supports the State's position is clearly enough set forth. I submit that the provisions of § 23-5-152(3), MCA, as regards licensing are dispositive.

Montana law requires that:

> In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. <u>Where there are several orovislons or particulars, such a construction is. if possible, to be adooted as will give effect to all.</u> (Emphasis added.)

Section 1-Z-101, MCA. Applying that canon of statutory construction to §§ 23-5-152(3)(a), (b) and (c), MCA, and reading those sections <u>pari</u> <u>materia,</u> it is clear that the statute enacted by the legislature prohibits the conduct for which Haman claims she is entitled to a license, and that the statute would, likewise, prohibit the Department of Justice (department) from adopting rules to license that conduct.

Section 23-5-152(3)(a), MCA, authorizes the department to adopt rules to license persons who manufacture Montana-illegal gambling devices for export from the state. Section 23-5-152(3)(c), MCA, authorizes a person licensed under § 23-5-152(3), MCA, to import Montana-illegal gambling devices into the state after notifying and receiving authorization from the department. Section 23-5-152(3)(b), MCA, prohibits the manufacture or possession of Montana-illegal gambling devices for export <u>without</u>

8

a license.

The dispositive point, here, is that the only license which is authorized by § 23-5-152(3), MCA, is the one in subsection (3)(a), and that is the license for the manufacture of Montana-illegal gambling devices for export. There is no authorization in subsection (3) for the issuance of a license for possession without manufacture for export.

Even if it had a mind to, the department, under that statutory scheme, could not adopt rules to license possession of Montana-illegal gambling devices (or, as the Court's opinion points out, the "purchase" of such devices) without manufacture for export. Any such rule would be in derogation of the statute and would be unlawful. See Winchell v. Dep't of State Lands (1993), ___ Mont. ___ P.2d ___, Cause No. 93-311, decided December 7, 1993.

Accordingly, I specially *concur*.

_____
Justice


Justice Karla M. Gray joins in the foregoing special concurrence.

_____
Justice


9