No. 89-014

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

---

MARK ANDREWS,

        Claimant and Appellant,

    -vs-

FORD CONSTRUCTION, Employer,
       and
STATE FARM FIRE & CASUALTY CO.,

        Defendant and Respondent.

---

APPEAL FROM: The Workers' Compensation Court, The Honorable Timothy
Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        George H. Corn; Bell, Corn & Bell, Hamilton, Montana

    For Respondent:

        Robert E. Sheridan; Garlington, Lohn & Robinson,
        Missoula, Montana

---

Submitted on Briefs: Dec. 21, 1989

Decided: February 5, 1990

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Andrews appeals a decision of the Workers' Compensation Court wherein it found that Andrews was not entitled to recover workers' compensation benefits from Ford Construction. We affirm.

The sole issue presented for review is whether the Workers' Compensation Court erred in holding that § 39-71-405, MCA, is inapplicable to this case because no contractual relationship existed between appellant's employer, Gasvoda Construction Co., and Ford.

On September 22, 1983, appellant suffered an industrial accident while working for Jay Gasvoda d/b/a Gasvoda Construction Company (Gasvoda). At the time Gasvoda was uninsured as his workers' compensation insurance had lapsed two months prior due to Gasvoda's failure to pay premiums.

Both Ford and Gasvoda are construction contractors. Gasvoda's business primarily consists of all types of excavation work. Ford's primary business includes setting concrete forms, building basements, general building construction and setting-up foundations, including trailer foundations.

At the time of appellant's injury, Gasvoda was doing some excavation work for Michael and Clarence Hendon on property they owned near Victor, Montana. The Hendons had hired Gasvoda to do the excavation work necessary to place a double-wide mobile home on the property. The excavation work consisted of five specific

items: (1) excavating the double-wide site; (2) installing 100 feet of sewer line to the garage and house; (3) removal and installation of a pressure system; (4) installing a 150-foot water line from well to house; and (5) back filling after the concrete was set.

After the Hendons hired Gasvoda, Gasvoda suggested to Ford that he contact the Hendons about doing other work involved in the project. The Hendons hired Ford Construction to install the concrete footings for the mobile home, and they informed Ford where they wanted the mobile home located. Gasvoda agreed to follow Ford's specifications regarding excavating the foundation to ensure fulfillment of the Hendons' wishes. So, pursuant to the Hendons' directions, Ford staked the location for the excavation and Ford and Gasvoda worked together to establish the proper grade for the foundation and concrete footings.

No written agreement between Ford and Gasvoda existed for the Hendon project. The Hendons paid Ford and Gasvoda separately. Charles Ford testified that he did not feel he could have fired Gasvoda if he had thought Gasvoda was doing a poor job because Ford had not hired Gasvoda. Additionally, Ford never paid appellant's wages nor was appellant ever on Ford's payroll.

At issue in this case is § 39-71-405, MCA, which provides as follows:

> **39-71-405. Liability of employer who contracts work out.** (1) An employer who contracts with an independent contractor to have work performed of a kind which is a regular or a recurrent part of the work of the trade, business, occupation, or profession of such employer is liable for the payment of benefits under this chapter to the employees

of the contractor if the contractor has not properly complied with the coverage requirements of the Worker's Compensation Act. Any insurer who becomes liable for payment of benefits may recover the amount of benefits paid and to be paid and necessary expenses from the contractor primarily liable therein.

(2) Where an employer contracts to have any work to be done by a contractor other than an independent contractor, and the work so contracted to be done is a part or process in the trade or business of the employer, then the employer is liable to pay all benefits under this chapter to the same extent as if the work were done without the intervention of the contractor, and the work so contracted to be done shall not be construed to be casual employment. Where an employer contracts work to be done as specified in this subsection, the contractor and the contractor's employees shall come under that plan of compensation adopted by the employer.

(3) Where an employer contracts any work to be done, wholly or in part for the employer, by an independent contractor, where the work so contracted to be done is casual employment as to such employer, then the contractor shall become the employer for the purposes of this chapter. (Emphasis added.)

The Workers' Compensation Court found that the prerequisite contractual relationship between Ford and Gasvoda did not exist. In other words, Ford did not hire or contract with Gasvoda to work on the Hendon project. Therefore, § 39-71-405, MCA, did not apply and appellant could not recover benefits from Ford.

Because we are reviewing interpretation of a statute, the standard of review is whether the Workers' Compensation Court's interpretation of the law is correct. Wassberg v. Anaconda Copper Co. (1985), 215 Mont. 309, 314, 697 P.2d 909, 912. Upon review, we find that the Workers' Compensation Court correctly determined

4

that § 39-71-405, MCA, did not impose liability on Ford.

Appellant argues that he is entitled to relief under § 39-71-405, MCA, because Ford acted as a prime contractor on the Hendon project and Gasvoda was an uninsured subcontractor. In his argument, appellant relies heavily on the fact that Gasvoda agreed to excavate the foundation site according to Ford's specifications and that the two worked together to meet the specifications. However, the inherent necessity that Ford and Gasvoda work together on a particular aspect of the project so that the Hendons' project could be successfully completed does not elevate Ford to a prime contractor.

If Ford were the prime contractor for the Hendon project then Ford would have been responsible for the entire project. However, the record clearly establishes that Ford's responsibility only extended to placing the footings and pouring the concrete for the mobile home's foundation. Although Ford and Gasvoda worked together as necessary for Ford to carry-out Hendons' instructions regarding location of the mobile home, Ford was not involved with the other work Gasvoda did for Hendons. Ford simply did not function as a prime contractor, rather both Gasvoda and Ford each worked directly for the Hendons with each having responsibility for separate jobs the Hendons wanted accomplished.

In State Compensation Ins. Fund v. Castle Mountain Corp. (1987), 227 Mont. 236, 239-240, 739 P.2d 461, 464, we discussed § 39-71-405, MCA, in light of the purpose behind the statute. We quoted the following statement from IC Larson, Workmen's

5

Compensation Law, § 49.11 at 9-21 and 9-22:

> The <u>purpose</u> of this ["contractor-under" statutes like § 39-71-405, MCA] legislation was <u>to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, who has it within his power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation protection for their workers</u>. This being the rationale of the rule, in the increasingly common situation displaying a hierarchy of principal contractors upon subcontractors upon sub-subcontractors, if an employee of the lowest subcontractor on the totem pole is injured, there is no practical reason for reaching up the hierarchy any further than the first insured contractor. (Emphasis added.)

Although Gasvoda qualifies as "irresponsible and uninsured," nothing in the record leads to a conclusion that Ford had the ability to choose Gasvoda for the Hendon job or that Ford could control Gasvoda's work. To the contrary, Gasvoda chose Ford in the sense that initially Gasvoda suggested to Ford that he contact Hendons.

The plain language of § 39-71-405, MCA, reflects the purpose of § 39-71-405, MCA, by incorporating the elements of choice and control as necessary for imposing liability. Each subsection begins with the phrase "an employer who <u>contracts</u> work out." This language describes an employer who hires subcontractors to do all or some of the employer's work. If Ford had hired or contracted work out to Gasvoda, then Ford would have been in a position to choose or hire Gasvoda initially. Further, Ford would have been in a position to exercise control over Gasvoda and insist that Gasvoda carry workers' compensation insurance. However, because

6

no contractual relationship existed between Ford and Gasvoda, Ford was never in a position to take any precautionary measures that would further the purpose of the Workers' Compensation Act which is to "provide for the protection of workers." Without a contractual relationship, an insured contractor would be at risk to the employees of any uninsured contractor working on the same project without any means of control over the uninsured contractor. Such a result would be unfair and would not promote the statute's purpose which is to impose liability on employers who can take affirmative action to protect workers.

In sum, appellant fails to establish that Gasvoda and Ford were anything other than two contractors hired by the Hendons to work on the same project. Section 39-71-405, MCA, requires a contractual relationship to exist between an employer and an uninsured subcontractor before liability for workers' compensation benefits will be imposed on the employer. Because no such contractual relationship existed between Ford and Gasvoda, § 39-71-405, MCA, is inapplicable and appellant cannot recover benefits from Ford Construction.

Affirmed.

Conway Harrison
Justice

We concur:

J. A. Turnage
Chief Justice

John C. Sheehy

7

_R. C. McDonough_

_Frank J. Nelson_
Justices