No. 93-407

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994


LODGE GRASS HIGH SCHOOL DISTRICT No. 2,

    Petitioner and Appellant,

  v.

LORRAINE HAMILTON, TREASURER, BIG
HORN COUNTY,

    Respondent and Respondent,

  and

BIG HORN COUNTY HIGH SCHOOL DISTRICT NO. 1,

    Respondent and Intervenor.


APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Big Horn,
The Honorable   G. Todd Baugh   , Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        James L. Vogel, Attorney at Law, Hardin,
        Montana

    For Respondent:

        Natasha J. Morton, Attorney at Law, Hardin,
        Montana (Hamilton)

        Laurence R. Martin, Michael K. Rapkoch; Felt, Martin
        & Frazier, Billings, Montana (Intervenor)

FILED

MAR 24 1994

Ed Smith

Filed CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: January 13, 1994

Decided: March 24, 1994

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Thirteenth Judicial District Court, Big Horn County. Lodge Grass High School District No. 2 (Lodge Grass) appeals that court's order distributing coal tax revenues from mines within the Decker Elementary School District (Decker District) to Big Horn County High School District No. 1 (Hardin). We affirm.

On June 15, 1992, Lodge Grass sought declaratory relief by requesting judicial interpretation of § 15-23-703(4), MCA (1991). Lodge Grass alleged that the Big Horn County treasurer was improperly distributing Decker District's gross proceeds coal tax revenue to Hardin in conflict with § 15-23-703(4), MCA (1991). Lodge Grass argued that § 15-23-703(4), MCA (1991), compelled the treasurer to distribute the Decker District's gross proceeds coal tax revenue to Lodge Grass.

The court allowed Hardin to intervene in the matter. Hardin and Lodge Grass were the only active parties at the District Court level.

Both parties agreed that there were only five high school aged children in the Decker District and the arrangement for years had been to send the students to school in Wyoming. Previously, in January 1990, a group of electors in the Decker District filed a petition with the Big Horn County Superintendent of Schools (County Superintendent). The petition sought a transfer of the Decker District territory from Lodge Grass to Hardin. The County

2

Superintendent held a hearing and subsequently transferred the Decker District territory to Hardin.

Lodge Grass appealed the decision to the State Superintendent of Public Instruction, who, on October 26, 1990, affirmed the County Superintendent's decision to transfer the Decker District. On December 24, 1990, Lodge Grass petitioned for judicial review of that decision. District Court Judge Holmstrom dismissed the petition as untimely and we upheld his decision in Pretty On Top v. Snively, Cause No. 93-289 (decided March 22, 1994). In February 1991, the County Superintendent issued an order transferring the Decker District to Hardin.

Since 1991, the gross proceeds coal tax revenue from mines in the Decker District have been distributed to both Hardin and Lodge Grass. The Big Horn County treasurer has distributed a portion of the tax to Lodge Grass to cover bonded indebtedness, which Lodge Grass incurred while serving the Decker District.

Because no factual issues existed, the parties filed cross-motions for summary judgment. The District Court granted summary judgment in favor of Hardin, concluding that § 15-23-703(4), MCA (1991), required that the coal tax revenues be distributed to Hardin. Lodge Grass appeals and presents one issue:

Did the District Court err by concluding that § 15-23-703(4), MCA (1991), compelled the distribution of the Decker District's gross proceeds coal tax revenues to Hardin?

Our standard of review on a grant of summary judgment is identical to that of the trial court. McNeil v. Currie (1992), 253

3

Mont. 9, 14, 830 P.2d 1241, 1244. Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. If no disputed factual issues exist, then we examine whether the court correctly interpreted the law. See McNeil, 830 P.2d at 1244; see also Andrews v. Ford Construction (1990), 241 Mont. 203, 205, 786 P.2d 18, 19.

Here, after a careful review of the record we conclude that no disputed issues of material fact exist. Thus, we must review whether the law was interpreted correctly.

It is well established that this Court, in construing a statute, will effectuate the statute's legislative intent. State ex rel. Neuhausen v. Nachtsheim (1992), 253 Mont. 296, 299, 833 P.2d 201, 204. We first look to the plain meaning of the statute to determine legislative intent. Holly Sugar v. Dep't of Revenue (1992), 252 Mont. 407, 412, 830 P.2d 76, 79. If the plain meaning of the statute is clear from the language, we apply the law as written by the legislature and look no further to determine the legislature's intent. Neuhausen, 833 P.2d at 204.

Section 15-23-703(4), MCA (1991), provides in pertinent part:

Except as provided in subsections (5), (6), and (8), the county treasurer shall credit the amount determined under subsection (3) and the amounts received under 15-23-706:
. . .
(b) to school districts in the county that either levied mills in school fiscal year 1990 against 1988 production or used nontax revenue, such as Public Law 81-874 money, in lieu of levying mills against production, in the same manner that property taxes collected or property taxes that would have been collected would have been distributed in the 1990 school fiscal year in the school district.

4

Lodge Grass contends that since the Decker District was within the Lodge Grass district in 1990, Hardin could not levy against Decker District mines in that year. Therefore, since Hardin did not levy against Decker District mines in 1990, § 15-23-703(4)(b), MCA (1991), precludes Hardin from ever receiving Decker District tax revenues. Lodge Grass argues that it is the only district entitled to receive coal taxes from the Decker District. This argument lacks merit.

A plain reading of the statute reveals that a school district only had to levy against 1988 production in 1990. We will not insert omitted terms into a statute. Neuhausen, 833 P.2d at 204. Section 15-23-703(4)(b), MCA (1991), did not require a school district in 1990 to levy against a specific territory in order to receive tax revenues from that territory. However, the statute did provide that if a school district levied against any mine in 1990, then that district was entitled to receive coal tax revenues.

Here, it is undisputed that Hardin levied against 1988 production in 1990 in the Hardin district. Although Hardin did not levy against Decker District mines in 1990, the plain language of § 15-23-703(4)(b), MCA (1991), confirms that Hardin was not required to levy against the specific Decker District mines in 1990. Instead, Hardin only had to levy against 1988 production in 1990. Since Hardin levied against 1988 production in 1990, we conclude Hardin was entitled to tax revenues from the Decker District. We now turn our attention to whether Hardin was entitled to the distribution of the Decker District coal tax revenues under

§ 15-23-703(4)(b), MCA (1991).

Section 15-23-703(4)(b), MCA (1991), provides that coal tax revenues are to be distributed the same as property tax revenues were distributed in 1990. Lodge Grass argues that this sentence should be interpreted to mean that Lodge Grass has a "grandfathered right" to the coal tax revenues from the Decker District. According to Lodge Grass, since it received the coal tax revenues from the Decker District in 1990, it has a "grandfathered right" to continue receiving this revenue from that territory even though the Decker District was subsequently transferred to Hardin.

When a territory is transferred from one district to another, § 15-23-703(4)(b), MCA (1991), is not clear on its face as to the coal tax distribution scheme. However, it is well established "[i]f intent cannot be determined from the content of the statute, we examine the legislative history." State ex rel. Roberts v. Public Service Commission (1990), 242 Mont. 242, 246, 790 P.2d 489, 492.

In 1989, the legislature restructured both state and local property taxes in response to this Court's ruling in Helena Elementary Sch. Dist. No. 1 v. State (1989), 236 Mont. 44, 769 P.2d 684, which declared the State's system for funding public education unconstitutional. The legislature was concerned that the increase in mills from 45 to 55 would drastically affect coal producers. Thus, the State's old method of taxing coal gross proceeds with a property tax was replaced with a "flat tax" of five percent on production. 1989 Mont. Laws Ch. 11, Section 77. After that law

6

became effective, school districts were prohibited from levying a property tax against coal production. Instead, the school districts received the five percent "flat tax" revenues which were collected from the coal mines. In short, the "flat tax" replaced the property tax on coal production.

Hardin argues, and we agree, that the final clause of § 15-23-703(4)(b), MCA (1991), directs that the "flat tax" be distributed just as if a property tax on coal had been collected and in accordance with the property tax distribution schemes of 1990. Since § 15-23-703(4)(b), MCA (1991), refers directly to the 1990 property tax distribution scheme, we must examine the 1990 statutes which distributed property taxes. See Matter of W.J.H. (1987), 226 Mont. 479, 483-84, 736 P.2d 484, 486-87. Property taxes were distributed in 1990 by § 20-6-412, MCA (1989), which states:

> The property tax valuation used under the provisions of 20-9-142 for the purposes of fixing the tax levies, except the debt service fund tax levy, for a district that has had a boundary change at any time before the second Monday in August shall include the property tax valuation of any territory added to the district by such boundary change or exclude the property tax valuation of any territory detached from the district by such boundary change.

(Emphasis added.)

In this case, Hardin's boundary changed when the Decker District was transferred to it. Thus, under the 1990 property tax scheme, Hardin would have been entitled to the property tax revenue from the Decker District after that territory was transferred to Hardin. See § 20-6-412, MCA (1989).

The "flat tax," is distributed "in the same manner that

7

property taxes collected or property taxes that would have been collected would have been distributed in . . . 1990 . . . . ." Section 15-23-703(4)(b), MCA (1991), (emphasis added). Since Hardin would have been entitled to the Decker District coal property tax under the 1990 distribution scheme, § 15-23-703(4)(b), MCA (1991), distributes the 1991 "flat tax" against the Decker District mines to Hardin. We conclude that § 15-23-703(4)(b), MCA (1991), and § 20-6-412, MCA (1989), when read in conjunction, compel this Court to hold that Hardin was entitled to the distribution of the Decker District coal tax revenues in 1991.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
(Justices

8