MONTCO, a Montana
general partnership,
Plaintiff and Respondent,

v.

MARK A. SIMONICH, as Director of the
MONTANA DEPARTMENT OF
ENVIRONMENTAL QUALITY,
sub nom., ARTHUR R. CLINCH,
Commissioner of the DEPARTMENT OF
STATE LANDS; THE MONTANA
DEPARTMENT OF ENVIRONMENTAL
QUALITY, sub nom., THE
DEPARTMENT OF STATE LANDS; and
THE STATE OF MONTANA,
Defendants,

v.

NORTHERN PLAINS RESOURCE
COUNCIL, NATIVE ACTION and THE
NORTHERN CHEYENNE TRIBE,
Intervenors and Appellants.

No. 96-656.
Heard August 26, 1997.
Submitted August 26, 1997.
Rehearing Denied December 11, 1997.
Decided October 31, 1997.
54 St.Rep. 1150.
285 Mont. 280.
947 P.2d 1047.

For Appellant: **Steven H. Chestnut** (argued), Ziontz, Chestnut, Varnell, Berley & Slonim, Seattle, Washington (Northern Cheyenne Tribe); **Joe Rodriguez**, Lame Deer (Local Counsel for Native Action and Northern Cheyenne Tribe); **Sara Johnson**, Mullendore, Tawney & Watt, Missoula (Northern Plains Resource Council).

For Respondent: **Martha Sheehy** (argued), Anderson & Liechty, Billings; **Thomas E. Ebzery**, Billings.

JUSTICE NELSON delivered the Opinion of the Court.

This is an appeal from a summary judgment by the Thirteenth Judicial District Court, Yellowstone County, which allowed Montco to renew a mining permit and denied summary judgment to the intervenors, Northern Plains Resource Council, Native Action, and the Northern Cheyenne Tribe. The intervenors appeal. We reverse.

The decisive issue is whether Montco's mining permit terminated because of Montco's failure to begin mining operations, with the result that the permit could not be renewed.

## Background

In 1984, the Montana Department of State Lands (DSL) issued a five-year surface mining permit to Montco under the Montana Strip and Underground Mine Reclamation Act, §§ 82-4-201 to -254, MCA. The permit authorized Montco to develop a surface coal mine south of Ashland, Montana, and just east of the Tongue River, the eastern boundary of the Northern Cheyenne Indian Reservation.

Montco performed no site preparation, construction, or mining during the first three years of the permit period as required under both the statute and the permit, but it applied for and was granted a two-year extension of the deadline as allowed under § 82-4-221(1), MCA. During the first four years, the five-year permit was under challenge in administrative and judicial proceedings brought by the Northern Plains Resource Council, a nonprofit citizens' organization of landowners near the proposed Montco mine. By December 1988, those challenges were decided and rejected. Throughout that time, the permit and Montco's right to conduct mining operations under it remained in full force and effect.

As the five-year permit period neared its end, Montco still had not initiated any physical operations on the mine. The chief of DSL's Coal and Uranium Bureau asked DSL's chief legal counsel for an opinion on the interaction between the requirement that mining operations be initiated during the permit term and the renewability of the permit. Referring to the "due diligence requirements" of § 82-4-221(1), MCA, which direct that mining operations be commenced during the permit term, DSL Bureau Chief Lovelace asked whether a renewal application from Montco would be processed. The legal opinion concluded that the Montco permit should be renewed "upon a showing of the necessity for an extension of time to commence mining as required in ARM 26.4.406 [the regulation controlling discretionary extensions of the mining deadline] and upon following the procedures for renewal spelled out in ARM 26.4.410 [the regulation controlling permit renewals]."

Accordingly, DSL's legal position was that to obtain a renewal, Montco would also have to show that it qualified for an extension of the mining deadline. In December 1988, DSL's Commissioner advised Montco that if it applied for a renewal he would grant the application, because the permit had been the subject of administrative and judicial litigation for four of its five years and Montco therefore had

"good reason under a test of prudent business practices for not initiating mining."

Before the end of the five-year permit term, Montco applied for renewal. Failing through oversight to follow its own legal position that the renewal application must be processed parallel with an application for extension of the mining deadline, DSL simply granted a five-year renewal, tacitly moving the mining deadline to the end of the third year of the renewal term, eight years after the original permit was issued.

As the end of year eight approached, Montco still had not begun any preparation, construction, or mining. It applied for another two-year extension of the mining deadline. DSL granted two short extensions and then the full requested extension through year ten, in 1994. Throughout the second five-year period, there were no formal administrative or judicial proceedings challenging the state mining permit or mining deadline extensions.

As 1994 drew to a close, Montco still had not begun any physical operations. It applied for another five-year renewal. This time, DSL implemented its position that Montco must also formally apply for an extension of the mining deadline. Under protest, Montco applied for a three-year extension of the mining deadline to the end of year thirteen in 1997.

Intervenors Northern Cheyenne Tribe, Northern Plains Resource Council, and Native Action (a nonprofit organization on the Northern Cheyenne Reservation) each formally opposed the applications for renewal and extension. DSL held an informal conference on the applications and objections, and the Intervenors, Montco, and others submitted oral and written comments. In December 1994, the Commissioner issued findings of fact and an order denying an extension of the mining deadline and discontinuing processing of the renewal application on the basis that denial of the extension rendered the renewal moot.

Montco petitioned DSL to complete processing of its renewal application and to reconsider its denial of the mining deadline extension. It also filed the complaint in this action, which was stayed pending the administrative proceedings. In March 1995, DSL held a second informal conference, at which the intervenors presented oral testimony and written materials. After the conference, all parties submitted further written materials. In April 1995, the Commissioner issued a final decision superseding his decision of December 1994 and renewing the permit, but holding that renewal did not carry

with it an automatic extension of the mining deadline. Reaffirming his prior decision, the Commissioner denied the mining deadline extension and held that the permit was therefore terminated.

Montco then initiated a contested case proceeding within DSL concerning the Commissioner's April 1995 decision. The Intervenors jointly filed a cross request for such a proceeding. All parties negotiated and approved a stipulation and order terminating the contested case proceeding by adopting the April 1995 decision of the Commissioner as DSL's "final decision" on Montco's applications for extension and renewal. This paved the way for adjudication of Montco's and the Intervenors' claims through this litigation.

Continuing this action in District Court, the Intervenors were granted leave to intervene and filed their joint answer in intervention. An agreed scheduling order was entered on the basis of the administrative record as submitted to the court, and the Intervenors, Montco, and DSL each moved for summary judgment.

Each summary judgment motion was based entirely on the administrative record and on the pleadings filed; no affidavits or additional evidentiary materials were submitted in opposition to summary judgment and there was no contention that genuine issues of material fact existed. The Intervenors contended that, as a matter of law, Montco's mining permit was not renewable for a third five-year term because it terminated for failure to commence mining operations by the extended mining deadline. They also argued that, should the court hold that the permit was renewable, renewal did not automatically carry with it an extension of the mining deadline and in connection with renewal, Montco was obligated to apply for an extension of the mining deadline, the grant or denial of which was discretionary.

DSL's summary judgment motion was premised on the permit being renewable for a third five-year term. Montco asked the court to direct DSL to renew the permit, to declare that the renewal automatically carried with it the third year extension of the mining deadline, and to vacate and reverse DSL's administrative decision which held to the contrary and terminated the permit.

After oral argument, the District Court granted Montco's motion for summary judgment and denied the summary judgment motions of the Intervenors and DSL. The court vacated and reversed DSL's administrative decisions and directed the Department of Environmental Quality to renew the mining permit. The court did not require an application for extension of the mining deadline in connection with

the renewal. The Intervenors each separately appealed; DSL did not appeal. This Court ordered the appeals consolidated, and the Intervenors filed a consolidated brief.

## Discussion

Did Montco's mining permit terminate because of Montco's failure to begin mining operations, with the result that the permit could not be renewed?

We review a district court's grant of a motion for summary judgment *de novo*, applying the same criteria under Rule 56(c), M.R.Civ.P., as did the district court. *Missoula Rural Fire Dist. v. City of Missoula* (1997), [283 Mont. 113], 938 P.2d 1328, 1329. Under Rule 56(c), M.R.Civ.P., summary judgment shall be rendered if the documents on file with the court establish that there is no issue of material fact and that the moving party is entitled to judgment as a matter of law. Here, the material facts of the case are not in dispute. We review the court's conclusions of law simply to determine whether the court's interpretation of the law is correct. *Matter of Estate of Dern Family Trust* (1996), 279 Mont. 138, 144, 928 P.2d 123, 127.

The controlling statute is § 82-4-221(1), MCA (1993):

(1) An operator may not engage in strip or underground mining without having first obtained from the department a permit designating the area of land affected by the operation. The designation must include all lands reasonably anticipated to be mined or otherwise affected during the applicable 5-year period. The permit must authorize the operator to engage in strip or underground mining upon the area of land described in the application and designated in the permit for a period of 5 years from the date of its issuance. The permit is renewable upon each 5-year anniversary after issuance upon application to the department at least 120 but not more than 150 days prior to the renewal date so long as the operator is in compliance with the requirements of this part, the rules adopted to implement this part, and the reclamation plan provided for in 82-4-231 and agrees to comply with all applicable laws and rules in effect at the time of renewal. The renewal is further subject to the denial provisions of 82-4-227, 82-4-234, and 82-4-251. On application for renewal, the burden is on the opponents of renewal to demonstrate that the permit should not be renewed. A permit shall terminate if the permittee has not commenced strip- or underground-mining operations pursuant to the permit within 3 years of the issuance of the permit. However, the

department may grant reasonable extensions of time upon a showing that the extensions are necessary by reason of litigation precluding the commencement or threatening substantial economic loss to the permittee or by reason of conditions beyond the control and without the fault or negligence of the permittee. With respect to coal to be mined for use in a synthetic fuel facility or specific major electric generating facility, the permittee is considered to have commenced strip- or underground-mining operations at the time the construction of the synthetic or generating facility is initiated.

In 1995, this subsection was amended to provide, in the third-from-last sentence, that a permit "must" terminate instead of "shall" terminate if mining operations were not timely commenced. Both "shall" and "must" are mandatory, rather than permissive. *ISC Distributors, Inc. v. Trevor* (1995), 273 Mont. 185, 201, 903 P.2d 170, 179. (Johnson, J., concurring). The 1995 amendment also extended the time for permit renewal from "at least 120 but not more than 150 days prior to the renewal date" to "at least 240 but not more than 300 days prior to the renewal date." For ease of reference, we will refer to the 1993 version of the statute, which used "shall".

 In construing a statute, a court must reject a construction that would leave any part of the statutory language without effect— the court must give effect to all relevant provisions of the statute. *Darby Spar, Ltd. v. Dept. of Revenue* (1985), 217 Mont. 376, 379, 705 P.2d 111, 113. At the same time, a court must not insert omitted terms into a statute. *Lodge Grass High School v. Hamilton* (1994), 264 Mont. 290, 293, 871 P.2d 890, 892. In effectuating legislative intent, a court must first look to the plain meaning of the statute. *Lodge Grass*, 871 P.2d at 892. Finally, construction of a statute should not lead to absurd results if reasonable construction will avoid such results. *Darby Spar*, 705 P.2d at 113.

Montco claims that a plain reading of § 82-4-221(1), MCA, indicates that the requirements for a permit renewal do not include as a prerequisite the procurement of an extension of time to commence mining. To the contrary, a plain reading of the statute demands the opposite result.

 Under § 82-4-221(1), MCA, a mining permit is issued for five years, and it terminates at the end of five years unless properly renewed. Once the permit is issued, mining must be commenced within three years. If mining is not commenced within three years, then the time to commence mining can be reasonably extended for up

to two years if the permittee can demonstrate that mining was not commenced because of litigation precluding commencement or threatening economic loss to the permittee, or reasons beyond the permittee's control and without fault or negligence. Under the clear and unambiguous provisions of the statute, if mining is not commenced within the extended two-year period, then the permit terminates.

While § 82-4-221(1), MCA, refers in several of its provisions to the "permittee," in providing for renewal, the statute instead states that renewal may be sought by "the operator." "Operator" is defined under § 82-4-203(21), MCA, as one "engaged in" mining. A permittee who has never commenced mining is not an "operator" engaged in mining.

If mining is commenced within the initial three-year period or within an extended two-year period, then the permit can be renewed for an additional five years, so long as the operator is in compliance with the requirements of part 4 of Title 82, the rules, and the reclamation plan, and agrees to comply with all applicable laws and rules in effect at the time of renewal. Once the permit expires within the initial three-year period or the extended two-year period, then, as a matter of law and under the statute's terms, the permit cannot be renewed, because the operator would not be in compliance with the requirements of "this part," i.e., the requirement that there be mining under the permit within the time provided. The mining condition is embodied in the renewal sentence of § 82-4-221(1), MCA, and meeting the condition of mining is a precondition to renewal. The sentence on renewability does not, as the District Court incorrectly held, trump all other statutory duties and conditions.

Similarly, ARM 26.4.410 (now transferred to ARM 17.24.416), which establishes regulatory factors for renewal, cannot provide for renewal in derogation of the statute. The statute conditions the permit's life on the initiation of mining operations by the mining deadline, which deadline may be extended in three years, to the end of the permit's five years. Failure to meet the deadline is a violation of both a condition and a term of the permit.

The District Court's decision eviscerates the mining deadline in § 82-4-221(1), MCA, in cases in which the deadline is extended to the end of the permit term. Under the District Court's reasoning, when the deadline is moved to the last day of the permit term, it becomes a dead letter, and extension does not reset the deadline—it eliminates it. The court's decision makes the "shall terminate" provision in the statute surplusage in any case in which the permit, through mining deadline extensions, remains extant after the five-year term without

mining. Under the District Court's rationale, and notwithstanding the permittee/operator distinction discussed above, if a permittee chooses not to request renewal, the permit will terminate because the permittee has elected to relinquish it. Alternatively, under the court's rationale, if the permittee requests renewal, there will be a renewal accompanied by an automatic three-year extension of the mining deadline. This renders meaningless the "shall terminate" language which follows the renewal provision in the statute. The court's decision is also at odds with the formulation of the Montana Strip and Underground Mine Reclamation Act, which seeks an orderly development of coal resources while protecting a wide range of other interests and values. See § 82-4-202, MCA.

██ To summarize the plain language of § 82-4-221(1), MCA, on timely application and so long as the operator is in compliance with the preconditions set out in this subsection, an expired permit in good standing can be renewed, while a permit which is legally terminated because of failure to meet the terms of the permit cannot be renewed. Failure to meet the terms of the permit includes failure to commence mining within the original or extended deadline. Under those circumstances, the permitting process must start over.

We therefore reverse the District Court's decision and order that summary judgment be entered in favor of the Intervenors.

JUSTICES TRIEWEILER, LEAPHART and HUNT concur.

JUSTICE REGNIER specially concurring.

I agree with the majority's conclusion that the District Court's decision essentially eliminates the requirement that an entity begin mining, making the "shall terminate" provision in § 82-4-221(1), MCA, surplusage. Under the District Court's rationale, if an operator requests renewal, it will receive that renewal, along with an automatic three-year extension of its mining deadline, thus effectively eliminating the mandate that a permit terminate unless the operator obtains an extension. In my view, the statutory mandate is not, however, as the majority concludes, that a permit terminate at the conclusion of the five-year permit term if mining has not begun, but rather that the permit will terminate if mining has not begun *and* an extension of the mining deadline has not been secured.

In examining the provisions of § 82-4-221(1), MCA, the majority concludes that if a permittee does not commence mining within three years from the date its permit was issued, "the time to commence mining can be reasonably extended for up to two years if the permit-

tee" meets certain statutory criteria. Thus, the majority reasons, "[u]nder the clear and unambiguous provisions of the statute, if mining is not commenced within the extended two-year period, then the permit terminates." Although the majority acknowledges that the mining deadline may be extended "for up to two years," the statute itself places no such restriction upon the duration of permissible extensions. Rather, with respect to mining deadline extensions, § 82-4-221(1), MCA, provides specifically that:

[T]he department may grant reasonable extensions of time upon a showing that the extensions are necessary by reason of litigation precluding the commencement or threatening substantial economic loss to the permittee or by reason of conditions beyond the control and without the fault or negligence of the permittee.

This provision in § 82-4-221(1), MCA, specifically authorizes the department to grant more than one extension of time so long as the applicant meets certain criteria. Nowhere does the statute limit extensions to the original five-year permit term.

The majority observes that the "mining condition is embodied in the renewal sentence of § 82-4-221(1), MCA, and meeting the condition of mining is a precondition to renewal." Although the statute provides that the permit "shall terminate" if mining has not commenced within three years of issuance of the permit, the subsequent sentence explicitly permits the department to extend that deadline. Assuming an entity obtains just such an extension, it is in compliance with the requirements of § 82-4-221(1), MCA. Nowhere does the statute state that mining is a precondition to renewal.

Accordingly, I believe the correct interpretation of § 82-4-221(1), MCA, is not to imply the requirement that mining begin within the initial five-year permit period, but to require, as does the statute, that an operator obtain an extension in the event it has not begun to mine within that period. Therefore, an operator who seeks a renewal must also apply for and obtain a second extension of the mining deadline. I would thus reverse the District Court to the extent that it held a renewal carries with it an automatic extension of the mining deadline.

Based on the foregoing, I concur with the majority's decision to reverse the District Court, but I would do so on the alternative basis that the court erred in concluding that a renewal obtained pursuant to § 82-4-221(1), MCA, carries with it an automatic extension of the mining deadline. Montco was indeed entitled to renew its permit, but it failed to successfully obtain another extension of the mining dead-

line as required. When Montco failed to successfully obtain an extension of its mining deadline, its renewed permit became meaningless.

Because the District Court held Montco was not required to obtain an extension of its mining deadline, it thus did not review the DSL's decision denying Montco's application for an extension. Accordingly, I would remand this case to the District Court for a determination as to whether the DSL erred in denying Montco's application for an extension of its mining deadline.

CHIEF JUSTICE TURNAGE and JUSTICE GRAY join in the foregoing concurring opinion.