No. 00-001

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 186N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JASPER LEVI PHILLIPS,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Alfred F. Avignone, Lisa A. Banick, Garrity, Avignone, Banick & Whetstone, Bozeman, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, Tammy K. Plubell, Assistant Montana Attorney General; Marty Lambert, Gallatin County Attorney, Bozeman, Montana

Submitted on Briefs: August 2, 2001
Decided: September 7, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Jasper Levi Phillips (Phillips) appeals from an order entered by the Eighteenth Judicial District Court, Gallatin County, denying his Motion to Correct Sentence. We affirm.

¶3 The following issues are presented on appeal:

¶4 1. Is Phillips' sentence illegal because the District Court erred in interpreting and applying Montana's correctional and sentencing statutes?

¶5 2. Do the procedures used by Montana's courts in maintaining sentencing data violate Phillips' constitutional rights to due process under the Montana and U.S. Constitutions?

¶6 3. Do Phillips' convictions and sentences for conspiracy and theft violate Montana statutes and the Montana and U.S. Constitutions?

## BACKGROUND

¶7 By the time Phillips was convicted of burglary in 1995, he had been involuntarily dismissed from high school and the Job Corps. The District Court deferred sentencing Phillips on condition he participate successfully in a community-based alternative, which provided housing and mentoring to Phillips. Within a year, he was involved in a physical altercation, provided a BB gun for use in a robbery, and failed to complete his chemical dependency regimen. The State moved to revoke Phillips' deferred sentence, but the District Court arranged for inpatient treatment in Phillips' mother's home. This program

failed and he was placed in a pre-release center. This, too, failed and Phillips was placed in the Montana State Prison (MSP) for 16 months. While at MSP, he received 15 disciplinary reports. He was discharged in June of 1998.

¶8 A year later, Phillips entered guilty pleas to charges of robbery, conspiracy to commit a second robbery, theft and felony assault resulting from offenses committed only months after his discharge from prison. Phillips had conspired with others to rob a Pizza Hut in January 1999. Two other conspirators actually robbed the Pizza Hut while Phillips and another person stole a pickup. After being stopped by sheriff's deputies, Phillips fired approximately four shots from his handgun at the officers. On August 31, 1999, the District Court sentenced Phillips to serve a total of 50 years in MSP, with no time suspended: 15 years for robbery; 15 years for conspiracy to commit robbery; 10 years for theft; and 10 years for assault, all sentences to be served consecutively. Phillips replaced his counsel following the entry of his guilty pleas.

¶9 On October 13, 1999, Phillips filed a motion to correct his sentence with the trial court, pursuant to § 46-18-117, MCA, asserting that the sentences imposed by the court were in error or illegal. Phillips claimed: 1) that the District Court failed to sentence him in accordance with Montana's correctional and sentencing statutes; 2) that the failure to maintain statutorily-required sentencing data violated his due process rights; and 3) that his convictions and consecutive sentences for conspiracy to commit robbery of the Bozeman Pizza Hut and for theft of a vehicle to be used as a getaway car violated prohibitions against double jeopardy found in § 46-11-410, MCA, and the Montana and U. S. Constitutions. The District Court denied Phillips' motion and he appeals.

## DISCUSSION

¶10 1. *Is Phillips' sentence illegal because the District Court erred in interpreting and applying Montana's correctional and sentencing statutes?*

¶11 We review a criminal sentence only for legality. *State v. Montoya*, 1999 MT 180, ¶ 15, 295 Mont. 288, ¶ 15, 983 P.2d 937, ¶ 15. A sentence is legal if it falls within statutory parameters. *State v. Gordon*, 1999 MT 169, ¶ 45, 295 Mont. 183, ¶ 45, 983 P.2d 377, ¶ 45.

We review a trial court's interpretation of the law, including questions of statutory interpretation, to determine whether the court's interpretation is correct. *Montoya*, ¶ 16

(citations omitted).

¶12 Phillips concedes that the sentences imposed are within the statutory parameters for sentences for the offenses of which he was convicted. He argues, however, that Montana's sentencing and correctional policy set forth in § 46-18-101, MCA, requires the District Court to sentence him commensurate with sentences imposed on others committing the same offenses. The court having failed to do so, Phillips contends, his sentence is illegal. Phillips misstates the law.

¶13 The Legislature has specified that the correctional and sentencing policy of this State is to:

> (a) punish each offender commensurate with the nature and degree of harm caused by the offense;
>
> (b) protect the public by incarcerating violent offenders and serious repeat offenders;
>
> (c) provide restitution, reparation, and restoration to the victim of the offense; and
>
> (d) encourage and provide opportunities for the offender's self-improvement.

Section 46-18-101(2), MCA. This policy is to be achieved pursuant to certain enumerated principles:

> (a) Sentencing and punishment must be certain, timely, consistent, and understandable.
>
> (b) Sentences should be commensurate with the punishment imposed on other persons committing the same offenses.
>
> (c) Sentencing practices must be neutral with respect to the offender's race, gender, religion, national origin, or social or economic status.
>
> (d) Sentencing practices must permit judicial discretion to consider aggravating and mitigating circumstances.
>
> (e) Sentencing practices must include punishing violent and serious repeat felony

offenders with incarceration.

(f) Sentencing practices must provide alternatives to imprisonment for the punishment of those nonviolent felony offenders who do not have serious criminal records.

(g)Sentencing and correctional practices must emphasize that the offender is responsible for obeying the law and must hold the offender accountable for the offender's actions.

(h) Sentencing practices must emphasize restitution to the victim by the offender. A sentence must require an offender who is financially able to do so to pay restitution, costs as provided in 46-18-232, costs of court-appointed counsel as provided in 46-8-113, and, if the offender is a sex offender, costs of any chemical treatment.

Section 46-18-101(3), MCA.

¶14 Even a casual reading of § 46-18-101(3), MCA, reflects that all but one of the sentencing principles are mandatory; that is, they "must" be followed by the sentencing court. The only exception is the commensurate sentencing factor, which is a "should." "Should," when used in connection with an obligation or duty, is somewhat weaker than "ought" and appreciably weaker than "must" and "have to." *See Montco v. Simonich* (1997), 285 Mont. 280, 287, 947 P.2d 1047, 1051 (for purposes of statutory construction, both "shall" and "must" are mandatory); *State v. Bartlett* (1995), 271 Mont. 429, 432-33, 898 P.2d 98, 100 (the word "shall" in a statute is compulsory). *See also Webster's New American Dictionary* 369, 480 (1995) ("ought" expresses obligation or advisability; "should" expresses obligation or propriety).

¶15 The Legislature chose a word with a significantly different meaning for § 46-18-101(3)(b), MCA, regarding commensurate sentences, than it did for the other seven factors that "must" be considered by sentencing courts, clearly reflecting its intent to ascribe a lesser weight to the commensurate sentences factor. We give words their common meaning and may not insert into a statute that which has been omitted. Sections 1-2-101 and 106, MCA.

¶16 Moreover, the District Court's failure to assign the commensurate sentences factor the weight desired by Phillips does not equate to the court giving it no meaningful effect, Phillips' assertion to the contrary notwithstanding. Indeed, Phillips acknowledges, and the

record reflects, that the District Court considered the commensurate sentences factor in sentencing Phillips. Finally, Phillips mistakenly argues that information regarding commensurate sentences could only be gained from the sentencing data that has never been maintained under § 46-18-604, MCA, when in fact the statute establishes no such link.

¶17 Phillips next requests that this Court take judicial notice, pursuant to Rule 201, M.R. Evid., of certain "facts," which consist of information he compiled and submitted to the District Court post-sentencing regarding sentences imposed on others for similar crimes.

¶18 Rule 201, M.R.Evid., addresses judicial notice of facts, and provides in pertinent part:

> (b) Kinds of facts. A fact to be judicially noticed must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.
>
> (c) When discretionary. A court may take judicial notice, whether requested or not.
>
> (d) When mandatory. A court shall take judicial notice if requested by a party and supplied with the necessary information.

¶19 Taking judicial notice is generally the act of recognizing the existence and truth of certain facts. Phillips' facts, as he refers to them, do not meet the criteria set forth in the statute, if for no other reason than none of the defendants he refers to were charged collectively with the same crimes as was he, nor is there any information regarding other statutory factors involved in their sentencing. His interpretation of the information is, as a result, subject to reasonable dispute, and is, therefore, not capable of accurate and ready determination from sources whose accuracy cannot be reasonably questioned. While Phillips asks this Court to take judicial notice of the sentencing data he provided, we will not do so for the above reasons.

¶20 Moreover, Phillips' sentences were supported by other evidence in that the sentences were consistent with Montana's correctional and sentencing statutes. Phillips contends the court refused to take notice of the sentencing information he compiled, but this very information was presented in his briefs to the courts, and the record shows the information regarding other participants was the subject of the sentencing court's Reasons for

Sentence, and later an extended discussion with the court regarding Phillips' motion to correct sentence. We conclude the information Phillips compiled did not meet the standards set forth in Rule 201, M.R.Evid. But even if it did, the District Court did not err when it sentenced Phillips consistent with the policies and factors set forth in § 46-18-101, MCA, and the statutes setting forth the sentences for the specific crimes to which Phillips pleaded guilty.

¶21 We conclude from the record that the District Court gave all the sentencing factors proper consideration as required under § 46-18-102(3)(b), MCA, and sentenced Phillips to terms of incarceration within statutory parameters. Nothing more is required. Because the District Court did not err in interpreting and applying Montana's correctional and sentencing statutes, we hold that Phillips' sentences are legal and not in error.

¶22 Because we review sentences only for legality, and because we have determined these sentences are legal, further arguments relating to sentencing equity must be made to the Sentence Review Division. *See* §§ 46-18-901 through 905, MCA; *State v. Montoya*, 1999 MT 180, ¶ 15, 295 Mont. 288, ¶ 15, 983 P.2d 937, ¶ 15.

¶23 2. *Do the procedures used by Montana's courts in maintaining sentencing data violate Phillips' constitutional rights to due process under the Montana and U.S. Constitutions?*

¶24 Section 46-18-604, MCA, sets forth detailed sentencing data which must be forwarded to the clerk of this Court by the clerks of Montana's district courts. The clerk of this Court is then required to compile the reports and distribute the data to district court clerks and other interested parties annually. These statutory requirements have never been met.

¶25 Phillips argues that the failures to compile and submit the statutorily required sentencing data to a central repository, and of the District Court to consider the data, violate his federal and state constitutional rights to due process. For Phillips to prevail on this argument we would have to agree with his premise under Issue 1 that the courts must consider and then impose sentences consistent with this data at sentencing. We have rejected Phillips' arguments in that regard.

¶26 Phillips mistakenly argues that § 46-18-101, MCA, confers a constitutional right to a commensurate sentence. As we concluded in Issue 1, the commensurate sentence factor is but one of eight broad sentencing factors to achieve the correctional and sentencing policies set forth by the Legislature, and is singularly to be accorded the least weight of

the eight factors.

¶27 In support of his argument, Phillips cites *State v. Goulet* (1996), 277 Mont. 308, 921 P.2d 1245, for the premise that it is fundamentally unfair for a state to fail to afford its citizens rights provided by that state's statutory laws. *Goulet* actually stands more for a validation by the U.S. Supreme Court of this Court's historic enforcement of Montana's sentencing parameters, which is what we are faced with here, and militates in favor of the State's position in this case. In *Goulet*, the defendant committed the offense of felony escape and pleaded guilty thereto. The sentence imposed was consistent with recommendations of the probation officer and prosecutor, and within the statutory parameters for his crimes. The trial court took into consideration Goulet's prior record and long history of contact with the legal system as a juvenile, and this Court affirmed the sentence imposed by the District Court. *Goulet*, 277 Mont. at 311-12, 921 P.2d at 1247. Here, Phillips committed the crimes for which he was charged and to which he pleaded guilty. The sentence imposed was consistent with the recommendations of the probation officer and within the statutory parameters for his crimes. The District Court noted his prior record and long history with the legal system as a juvenile.

¶28 *Goulet* is underpinned by our decision in *State v. Krantz* (1990), 241 Mont. 501, 788 P.2d 298, *cert. denied by Krantz v. Montana* (1990), 498 U.S. 938, 111 S.Ct. 341, 112 L. Ed.2d 306. In *Krantz*, the U.S. Supreme Court declined to grant *certiorari* to review this Court's application of federal and Montana constitutional due process analysis. In that case, we adopted the rule that the State need not prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the *severity of punishment*. *Krantz,* 241 Mont. at 508-10, 788 P.2d at 302-04 (citing *McMillan v. Pennsylvania* (1986), 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67) (emphasis added). While various aspects of *McMillan* have since been refined, this principle has not been modified. It has most recently been reaffirmed by the U.S. Supreme Court when it denied *certiorari* in *United States v. Segien* (1997), 114 F.3d 1014, *cert. denied by Segien v. United States* (1998), 523 U.S. 1024, 118 S.Ct. 1310, 140 L.Ed.2d 474. The *Segien* court also noted that "the Due Process Clause protects [criminal defendants] against *conviction* except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship* (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed. 2d 368 (emphasis added). "However, facts impacting the severity of a sentence need not be proven beyond a reasonable doubt . . . ." *Patterson v. New York* (1977), 432 U.S. 197, 210, 214 & n.15, 97 S.Ct. 2319, 2327, 2329 & n.15, 53 L.Ed.2d 281.

¶29 The unwillingness of the U.S. Supreme Court to deem sentencing information worthy of the level of due process protection Phillips requests is consistent with our own. We have also stated, entirely consistent with this analysis, that Montana recognizes that due process applies to sentencing, but the defendant's liberty interest during sentencing is less than that interest during trial. The process that is due, therefore, is not as great as that required by the substantive criminal charges. The defendant is entitled to reasonable notice and an opportunity to be heard during sentencing.

*State v. Miller, 1998 MT 177, ¶ 42, 290 Mont. 97, ¶ 42, 966 P.2d 721, ¶ 42.*

¶30 The sentencing information at issue here relates solely to the severity of sentencing, and has no bearing on Phillips' actual conviction. Phillips received adequate notice and was heard during sentencing. Moreover, under § 46-18-101, MCA, the sentencing information at issue here is to be assigned the least weight of all sentencing factors. The statute in no way implies or states that the only possible source for commensurate sentence information is the information called for under § 46-18-604, MCA. The court referenced its familiarity with the sentences imposed on others perpetrating these crimes and did not err in the way it did so. The court stated in its Order:

> The undersigned judge, having presided over criminal sentencings for almost 17 years, has both recollections of sentencing other defendants in Gallatin County and a strong sense of the type and length of sentences meted out against other defendants in the state of Montana. . . . [T]he court considered in this case, <u>among other factors</u>, the length of sentence to be imposed on defendant. . . . The availability of statewide sentencing statistics would not have changed the court's reasons for sentencing this defendant.

The lack of the sentencing information called for under § 46-18-604, MCA, does not implicate Phillips' constitutional rights to due process as he asserts. As a result, we conclude that the procedures used by Montana's courts in maintaining sentencing data do not violate Phillips' constitutional rights to due process under either the Montana or U.S. Constitutions.

¶31 Moreover, Phillips has failed to demonstrate that any prejudice resulted from the fact that the State has not compiled sentencing data under § 46-18-604, MCA. Again, the trial court specifically noted that additional data regarding sentences imposed on others around the State would not have affected in any way the sentences earned by Phillips for his

crimes, for which he entered voluntary and intelligent pleas of guilty, and which fall within statutory parameters. The court properly reviewed the requisite sentencing factors and properly exercised its statutory discretion.

¶32 Finally, the record does not reflect that Phillips requested the information required by § 46-18-604, MCA, at the time of his original sentencing, but rather that he raised the issue for the first time when he challenged the correctness and legality of his sentence under § 46-18-117, MCA. Arguably, and notwithstanding that we have addressed Phillips' arguments, he has not even properly preserved this issue for appellate review.

¶33 We conclude that Phillips' constitutional rights to due process under the Montana and U.S. Constitutions have not been violated by the manner in which the State maintains sentencing data.

¶34. *Do Phillips' convictions and sentences for conspiracy and theft violate Montana statutes and the Montana and U.S. Constitutions?*

¶35 Phillips contends that his convictions and sentences for conspiracy and theft violate § 46-11-410(2), MCA, which prohibits convictions of more than one offense under certain circumstances. He also contends that his convictions violate the double jeopardy provisions of both the Montana and U.S. Constitutions.

¶36 Phillips argues that his claims that his convictions and sentences for the crimes of conspiracy and theft violate provisions of the state and federal constitutions, and § 46-11-410(2)(b), MCA, were not waived because they raise jurisdictional defects or defenses which could be determined from the face of the record before the court. Phillips does not clearly articulate the jurisdictional defects or defenses he claims are present, and only raises this issue for the first time in his reply brief to this Court. However, since the defects would be obvious from the record, we will address his claims.

¶37 The core of Phillips' argument is that he was sentenced once for the theft of the pickup when he was sentenced for conspiracy to commit robbery of the pizza parlor and a second time for the same theft when he was sentenced on his conviction for the substantive offense of theft of the pickup. His argument as a whole is circular and would lead to absurd results. Under his reasoning, had he committed murder while stealing the pickup, as he nearly did when he shot at the deputies in pursuit of him, he would be immune from prosecution for the murder as it was merely an act in furtherance of the conspiracy.

¶38 The conspiracy to commit the robbery and the theft were two separate criminal acts. The conspiracy charge did not stem from a conspiracy to steal the pickup. The conspiracy charge stemmed from the conspiracy to rob the pizza parlor. That the theft of the pickup was listed as one of ten overt acts in furtherance of the conspiracy does not negate the import of the other nine acts in furtherance of the conspiracy, nor does it somehow convert the substantive offense of the pickup theft into a legally inconsequential act as argued by Phillips. Phillips and another individual stole the truck without the knowledge of the robbery actually occurring at the Pizza Hut. Two other individuals completed the robbery without the benefit of the stolen get-away vehicle. The fact that there was an agreement to steal a vehicle to effectuate a successful escape from the robbery does not mean that Phillips cannot be held accountable for this separate conduct. More importantly, Phillips was convicted of the conspiracy to commit robbery of the Pizza Hut, not the robbery itself. The District Court correctly concluded that § 46-11-410(2), MCA, was not violated because the conspiracy to rob the Pizza Hut was not a form of preparation to commit theft of the pickup.

¶39 Phillips also argues that his convictions and sentences for conspiracy and theft violate the double jeopardy provisions of both the Montana and U.S. Constitutions. To that end, Phillips correctly points out that Article II, Section 25 of the Montana Constitution protects persons from multiple prosecutions for offenses arising out of the same transaction and multiple punishments imposed at a single prosecution for the same offense. *See State v. Guillaume*, 1999 MT 29, ¶ 8, 293 Mont. 224, ¶ 8, 975 P.2d 312, ¶ 8 (citations omitted). However, Phillips incorrectly claims that his convictions for conspiracy and theft constitute multiple punishments for the same offense.

¶40 Phillips claims that he was made to suffer twice for the single act of the theft of the pickup and he relies on *Guillaume* for his contention that this was a violation of the double jeopardy provision. *Guillaume*, however, does not lend support to Phillips' argument. We held in *Guillaume* that the application of a weapon enhancement statute to a felony conviction where the underlying offense required proof of the use of a weapon violated the double jeopardy provision of Article II, Section 25 of the Montana Constitution. *Guillaume*, ¶ 16. We noted in *Guillaume* that the only fact which raised Guillaume's charge from a misdemeanor assault to a felony assault was the use of a weapon. Thus, when the weapon enhancement statute was applied to Guillaume's felony assault conviction, he was subjected to double punishment for the use of a weapon: once when the charge was elevated from misdemeanor assault to felony assault, and again when the weapon enhancement statute was applied. *Guillaume*, ¶ 18.

¶41 In the case *sub judice*, the District Court correctly concluded that the offense of theft and the offense of conspiracy to commit robbery have distinct elements which require proof of a fact that the other does not. To convict Phillips of conspiracy, the State had to prove that Phillips, with the purpose that an offense be committed, agreed with another to the commission of that offense and either Phillips or his co-conspirator completed an act in furtherance of that offense. Section 45-4-102, MCA. To convict Phillips of theft, the State had to prove that Phillips obtained or exerted unauthorized control over the property of another. Section 45-6-301, MCA. Hence, as the District Court noted, Phillips' conduct in committing conspiracy went beyond the one act of stealing the pickup and he could be convicted of the conspiracy without considering the act of stealing the pickup. Likewise, stealing the pickup was a separate and completed act which did not require proof of any agreement between Phillips and others.

¶42 Accordingly, we hold that Phillips' convictions and sentences for conspiracy and theft do not violate § 46-11-410(2), MCA, and the double jeopardy provisions of the Montana and U.S. Constitutions.

¶43 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

/S/ PATRICIA COTTER

/S/ JIM RICE